KENT CORPORATION, a N. C. CORPORATION, PLAINTIFF, v. CITY OF WINSTON-SALEM, DEFENDANT.

(Filed 12 January, 1968.)

**1. Contracts § 12—**

A contract must be construed with regard to the intention expressed by the language of the parties, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.

**2. Same—**

Where the terms are plain and explicit, the court will determine the legal effect of a contract and enforce it as written by the parties.

**3. Municipal Corporations § 17—     Contract held not to contemplate meter fines as rental revenue.**

The pleadings and evidence showed that the defendant municipality leased property to be used for off-street parking and that the rental therefor was to be based on the "proceeds from the operation of the parking meters" and the "revenue derived from the meters." Ordinances of the municipality prescribed penalties for violation of meter parking. Plaintiff lessor brought this action to recover its proportionate share of the monies collected by the municipality as penalties under the authority of the ordinances. *Held:* The terms of the contract, in the absence of any provision to the contrary, contemplate that the revenue and proceeds derived from the meters relate solely to coins inserted in the meters for the use of the parking spaces and not to penalties.

APPEAL by plaintiff from *Gambill, J.,* Second Week of April 17, 1967 Two-Week Session of FORSYTH.

Plaintiff instituted this action June 29, 1964, to recover additional rental for property in Winston-Salem, N. C., now owned by plaintiff and used by defendant, as lessee, and known as the Marshall Street-Spruce Street Parking Lot.

Defendant acquired possession of the subject property under lease dated December 5, 1950, executed by Mina P. Fleshman (widow), and Geraldine F. Pratt and husband, Clyde R. Pratt, as lessors, and by defendant, as lessee. By deed dated July 25, 1960, the said lessors conveyed the subject property to plaintiff, plaintiff being a

corporation established and incorporated on July 25, 1960, by Mrs. Fleshman and Mrs. Pratt.

The provisions of the lease relating to rental are as follows: "As rental for the demised premises, the Lessors shall receive the following sums, to wit: *From the proceeds from the operation of the parking meters installed upon the demised premises,* there shall first be paid to the Lessors annually, payable in quarterly instalments, a sum equivalent to six per cent (6%) of the gross sum of $125,000, plus an additional amount sufficient to reimburse Lessors for the amount of City and County *ad valorem* taxes paid by them on the demised premises, as shown by receipts showing such payment presented by Lessors to Lessee. After the foregoing sums have first been paid to Lessors *from the meter revenue,* there shall then be retained by the Lessee *from such revenue* an amount equal to six per cent (6%) on the gross sum of $125,000, plus an amount equal to said taxes. After the Lessee has been paid *from said meter revenue* the same amount as that paid to the Lessors as aforesaid, the additional proceeds *from the meters,* if any, shall then be equally divided between the Lessors and the Lessee, such division of the remaining proceeds to be made on June 30, 1951, and on the same date thereafter during the term of the lease, provided, however, that for the period between the date the meters are put into operation and June 30, 1951, the Lessors and the Lessee shall receive only the pro rata part of the annual rental as aforesaid, and likewise the Lessors shall only be reimbursed for the pro rata part of the 1951 City and County *ad valorem* taxes. The annual periods for the calculation and division of the revenue from the meters as aforesaid shall commence June 30, 1951, and the division shall be made on the same date thereafter during the term of the lease. *The Lessee shall not be liable to the Lessors for any other amount or sum as rental, and the rental payable to Lessors shall be paid solely from the revenue derived from the meters as aforesaid,* plus any revenue derived from the sale of advertising rights and privileges on the demised premises as hereinbefore provided." (Our italics.)

The lessee did not exercise the option to erect advertising billboards on the demised premises, and no such billboards have ever been erected thereon.

The term of the lease was for ten years with an option granted to the lessee to extend the term of the lease for an additional period of ten years. This option was duly exercised, and defendant is now in possession of the demised premises in accordance with the terms and provisions of the lease agreement.

The lessee agreed to purchase and install parking meters on the subject property, the meters to remain the property of the lessee and

to be removed by it upon termination of the lease. During the term of the lease, the lessee was to have complete control of the operation of the parking lot and of the meters, including "the policing of said parking lot and the fixing of the meter rates."

Defendant contends "the proceeds from the operation of the parking meters installed upon the demised premises," referred to in the lease, relates to coins deposited in the meters by patrons to activate the operation thereof. Defendant has fully accounted for and paid to the original lessors and to plaintiff their full share of these receipts. They are not involved in this litigation.

Plaintiff alleged that, "commencing with the first lease year of 1950-1951 and continuing each and every year thereafter including the current lease year of 1965-1966, the defendant has received proceeds and derived revenue from the said parking meters . . . in the form of collections of parking tickets; that said moneys so received by the defendant represent sums paid by persons using such parking spaces and failing to deposit the required parking charges in the meter provided for such purpose; that the plaintiff has made claim and demand upon the defendant to account for and pay to the plaintiff one-half (½) of all such proceeds or revenue derived from the payment of said parking tickets . . . but the defendant has failed, refused and neglected to make such accounting and payment to the plaintiff . . ." Plaintiff prays that it recover from defendant "a sum equal to one-half (½) of meter revenue derived from the parking tickets collected by the defendant on the lease property for each and every lease year commencing with 1950-1951 . . ."

The evidence consists of stipulations which, *inter alia,* identified the lease and each of the municipal ordinances referred to below, and the testimony of Mrs. Pratt. Mrs. Pratt testified, in substance, it was her understanding the lessors were to receive the stated portion of all revenue received from defendant's operation of the parking lot; and that she and her mother, the only persons interested in plaintiff, learned for the first time on July 18, 1962, that defendant was not accounting to plaintiff for any portion of its receipts from parking tickets.

The ordinances of the City of Winston-Salem, to which reference has been made, are as follows:

An ordinance adopted May 25, 1951, entitled, "An ordinance creating rules and regulations and establishing rates for the operation of off-street parking lots by the City." This ordinance applies, *inter alia,* to the "Marshall Street-Spruce Street Lot." It provides: "Any person violating any of the provisions of this ordinance shall be subject to the same penalties and punishment as are now or hereafter provided for the violation of any ordinance regulating the

parking of vehicles on any public street controlled by parking meters. All provisions of the City Parking Meter Ordinance, now or hereafter in force, and not inconsistent herewith, shall apply to the parking of a vehicle in any off-street parking lot maintained by the City of Winston-Salem."

An ordinance adopted July 20, 1951, amending said ordinance of May 25, 1951, which created rules and regulations and established rates for the operation of off-street parking lots by the City of Winston-Salem, and changed the parking meter rates applicable to off-street parking lots by the City of Winston-Salem, including the rates applicable to the "Marshall Street-Spruce Street Lot."

An ordinance adopted November 6, 1953, entitled, "An Ordinance Creating Rules and Regulations and Establishing Rates for the Operation of Off-Street Parking Lots by the City," which amended said ordinance of May 25, 1951, by providing that any person failing to "deposit the required coin in the meter for the space in which such vehicle is parked, or any person who parks a vehicle in either of said parking lots and permits same to remain parked overtime after expiration of the time for which the required coin has been deposited in the meter box, or any person who fails to pay the required charge for the privilege of parking in any of said parking lots, shall be subject to having such vehicle removed from such parking lot by a member of the Police Department of the City" and by providing that such vehicle could be towed away at a charge of $5.00 and be impounded at certain specified rates, and by providing that "(i)n addition to these charges, the owner of such vehicle shall pay the sum of $1.00 as a penalty for violating the rules and regulations applicable to the parking of vehicles on said parking lots."

There is no evidence or stipulation as to "parking tickets," if any, issued in connection with parking on the subject property. The record is silent as to whether "parking tickets" are issued by a parking lot attendant or by police officers; as to whether payment thereof is made to a parking lot employee or at the police department; or, as to whether the failure to pay such parking ticket results in the issuance of a warrant. All that appears in the record bearing upon these matters is set forth in the following stipulation: "It is stipulated and agreed that the City of Winston-Salem collected over the entire period of the Ordinances sums of money from customers using the parking area *under the authority of the Ordinances hereinabove listed;* that such were not included in the amounts paid to Kent Corporation or its predecessors and assigns over the entire period of the Ordinances." (Our italics.)

A jury trial was waived.

Judge Gambill entered judgment which, after setting forth findings of fact, concluded that "(t)he plaintiff and its predecessors in title are not entitled to an accounting for and a recovery of any fines or penalties collected by the City of Winston-Salem in connection with the Marshall Street-Spruce Street Parking Lot," and adjudged "that the plaintiff have and recover nothing of the defendant," and that the action be dismissed and plaintiff taxed with the costs.

Plaintiff excepted to certain of the findings of fact and also to the court's failure to make a finding as to the date on which plaintiff and its predecessors in title first learned "that the receipts from the City did not include sums collected by the City from parking tickets placed on cars failing to feed the meters or parked overtime on the leased premises." Plaintiff also excepted to the court's conclusions of law. Plaintiff excepted to the judgment and appealed.

*Blackwell, Blackwell, Canady, Eller & Jones for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice and Allan R. Gitter for defendant appellee.*

BOBBITT, J. The question for decision is whether defendant, by the terms of the lease, is required to account to plaintiff for one-half or any portion of the money collected by defendant as penalties for violations of the municipal ordinances relating to parking on municipal off-street parking lots. The answer depends upon whether the money so collected by defendant constitutes "proceeds from the operation of the parking meters," or "revenue derived from the meters."

In *Rhodes, Inc. v. Raleigh,* 217 N.C. 627, 9 S.E. 2d 389, 130 A.L.R. 311 (1940), ordinances purporting to regulate on-street parking by meters and providing penalties for the violation thereof were held invalid on the ground authority to enact such ordinances had not been conferred on municipal corporations by the General Assembly.

When *Rhodes* was decided, Section 2787, Subsection 31, of the Consolidated Statutes, conferred upon municipal corporations the power "(t)o provide for the regulation, diversion, and limitation of pedestrians and vehicular traffic upon public streets, highways, and sidewalks of the city."

The statute codified as C.S. 2787(31) was amended twice by the General Assembly of 1941.

C.S. 2787(31) was first amended by Chapter 153, Public Laws of 1941, which conferred upon municipal corporations authority to

regulate and limit vehicular parking on streets and highways in congested areas by parking meters as provided therein. The provisions of said Chapter 153, which relate solely to on-street parking, are the basis of decision in *State v. Scoggin,* 236 N.C. 1, 72 S.E. 2d 97 (1952), in which a conviction for violation of a Raleigh Parking Ordinance was upheld.

C.S. 2787(31) was later amended by Chapter 272, Public Laws of 1941, which provided: "The governing authorities of all cities and towns of North Carolina shall have the power to own, establish, regulate, operate and control municipal parking lots for parking of motor vehicles within the corporate limits of cities and towns. Cities and towns are likewise hereby authorized, in their discretion, to make a charge for the use of such parking lots." Section 2 of said Chapter 272 provided: "Municipal parking lots for motor vehicles established and operated by cities and towns are hereby declared to be for a public purpose."

The above statutory provisions were in force on December 5, 1950, when the lease here involved was executed.

C.S. 2787(31), as amended from time to time, is now codified as Section 160-200, Subsection 31, of the General Statutes. (Note: We do not find that the provisions of Section 2 of Chapter 272, Public Laws of 1941, have been brought forward and incorporated in any section of the General Statutes.)

The first ordinance regulating off-street parking on public parking lots operated by Winston-Salem was adopted May 25, 1951. It provided that violations thereof were subject to the same punishment and penalties as violations of the ordinance then in effect regulating on-street parking. The provisions of the later ordinances, which amended the ordinance of May 25, 1951, are sufficiently set forth in the statement of facts. It is noted, however, that prior to the adoption of the ordinance of November 6, 1953, the General Assembly, by its enactment of Chapter 879, Session Laws of 1953, ratified April 20, 1953, had authorized municipalities to levy a penalty of $1.00 for illegal parking of motor vehicles upon any street, alley, *or other public place.*

Decisions of this Court relating to off-street and on-street parking include *Britt v. Wilmington,* 236 N.C. 446, 73 S.E. 2d 289 (1952), and *Henderson v. New Bern,* 241 N.C. 52, 84 S.E. 2d 283 (1954). See also *Town of Graham v. Karpark Corp.,* 194 F. 2d 616 (4th Cir. 1952), affirming *Karpark Corp. v. Town of Graham,* 99 F. Supp. 124 (M.D.N.C. 1951). In our view, none of our prior decisions controls decision herein.

Plaintiff states, and rightly so, the question presented "is primarily one of construction of a written contract."

The basic rules for the construction of a contract are embodied in the following statement: "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.,* 229 N.C. 518, 50 S.E. 2d 295. "Where the terms are plain and explicit the court will determine the legal effect of a contract and enforce it as written by the parties." *Church v. Hancock,* 261 N.C. 764, 136 S.E. 2d 81. In this connection, see 2 Strong, N. C. Index 2d, Contracts § 12.

The rental, according to the explicit language of the lease, is to be based on the "proceeds from the operation of the parking meters" and the "revenue derived from the meters." Absent any provision suggesting a contrary meaning, we think these expressions refer solely to coins inserted in the meters for the activation thereof.

It appears that a Winston-Salem ordinance relating to on-street parking was in force when the ordinance of May 25, 1951, relating to parking on municipal off-street parking lots, was adopted. The record does not disclose whether it was contemplated on December 5, 1950, that defendant would adopt ordinances relating to municipal off-street parking and providing penalties for violations thereof. However, the lease, after referring to "the calculation and division of the *revenue from the meters,*" (our italics) adds: "The Lessee shall not be liable to the Lessors for any other amount or sum as rental, and the rental payable to Lessors shall be paid *solely* from the revenue *derived from the meters* as aforesaid . . ." (Our italics.)

The primary purpose of the penalties prescribed in the Winston-Salem ordinances relating to parking on municipal off-street parking lots is to enforce the provisions of such ordinances requiring that coins be deposited in the meters covering the parking periods used by the patrons. The collection of the penalty is ancillary to the accomplishment of said primary purpose. The lessors benefit from increased collections through the meters resulting from the provisions of the ordinances and the enforcement thereof by defendant at its expense.

It was stipulated that the money collected by defendant for which plaintiff seeks an accounting was collected *under authority* of said ordinances. It was not collected for use of space but for violation of a municipal ordinance. Neither by pleading nor by assignment of error does plaintiff challenge the validity of said ordinances. Even so, if such ordinances were invalid, the aggrieved party would be the patron of the parking lot from whom defendant unlawfully collected the penalty. Obviously, plaintiff would have no right thereto.

The conclusion reached is that any money collected by defendant under authority, or under color of authority, of said Winston-Salem ordinances, as penalties for violations of said ordinances, does not constitute "proceeds from the operation of the parking meters" or "revenue derived from the meters" within the meaning of those terms as used in the lease of December 5, 1950. Accordingly, the judgment of the court below is affirmed.

Having reached the conclusion that defendant was not obligated under the lease to pay to plaintiff or its predecessors in title any part of the sums of money collected as penalties under the authority of the municipal ordinances referred to above, the question as to when the plaintiff and its predecessors in title first learned that defendant was not accounting to them therefor is immaterial.

Affirmed.