BOARD OF TRANSPORTATION v. JAMES T. BRYANT, J. HOWARD CLARK, JAMES F. KIRKPATRICK, LAWRENCE Z. CROCKETT AND F. P. BODENHEIMER, JR., TRADING AND DOING BUSINESS AS AMERICAN INVESTMENT COMPANY; O. T. NARF, TRUSTEE; FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION; L. P. McLENDON, JR., TRUSTEE; JAY F. ZOOK, INC., AND HOWARD JOHNSON COMPANY, LICENSOR

No. 8118SC1200

(Filed 2 November 1982)

1. **Eminent Domain § 2.5; Highways and Cartways § 5.2— right-of-way agreement—no right of direct access to ramp**

   A right-of-way agreement providing that defendants' predecessor and her heirs and assigns shall have no right of access to an interstate highway constructed on said right-of-way except by way of ramps constructed at a survey station which is the center line of the intersection of the interstate highway and *another* highway *did not create a right* of direct access to an adjacent ramp leading to the interstate highway but required only an indirect access to the ramp. Therefore, defendants were not entitled to compensation because of the elimination of an intersection of a road abutting their property with the ramp where their property was provided with reasonable and adequate indirect access to the ramp.

2. **Eminent Domain §§ 2.5, 6.4— right-of-way agreement—exclusion of attorney's opinion as to effect**

   The trial court in an eminent domain proceeding properly excluded an attorney's expert testimony with respect to the chain of title to defendants' property and the effect on defendants' chain of title of a right-of-way agreement executed by defendants' predecessor in title since (1) title to defendants' property was not in issue and (2) the construction and legal effect of the right-of-way agreement was a matter of law for the court.

3. **Eminent Domain § 2.2; Highways and Cartways § 5.1— interference with access by highway construction—no right to compensation**

   In a proceeding to condemn land for highway purposes, defendant landowners were not entitled to compensation for "unreasonable" interference with access to their remaining property because some impairment of access occurred during construction of the highway where access to defendants' property was not totally cut off for any period of time and defendants had reasonable

and adequate access to their property by abutting streets or highways during the construction period.

APPEAL by defendants from *Lane, Judge.* Order entered 8 September 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 1 September 1982.

The Board of Transportation instituted this eminent domain proceeding, pursuant to G.S. 136-103, to condemn for highway use certain property of defendants located in the northwest quadrant of the interchange of High Point Road with Interstate Highway 40 (hereinafter referred to as I-40) in Greensboro. Defendants own two contiguous tracts of land, totaling approximately 4.39 acres, on which they have constructed a Howard Johnson motel. The westerly tract was originally owned by Mrs. Lillie York Lauder who entered into a right-of-way agreement with the State Highway and Public Works Commission on 26 June 1956. The Lauder right-of-way agreement states:

> It is further understood and agreed that the undersigned and their heirs and assigns shall have no right of access to the highway constructed on said right-of-way except at the following survey stations: By way of ramps constructed in connection with grade separation at Survey Station 372.05.96.

The Board and defendants stipulated that Survey Station 372.05.96 "is the point at which the center line of Interstate Highway 40 passes over the center line of High Point Road."

Before the filing of this action, defendants' property abutted upon High Point Road, a portion of a ramp leading from travel lanes of High Point Road to westbound travel lanes of I-40, and Pinecroft Road. Pinecroft Road intersected the ramp slightly west of the ramp intersection with High Point Road. In making highway improvements, the Board eliminated this Pinecroft Road-ramp intersection and constructed a cul-de-sac of Pinecroft Road a short distance northwest of defendants' property and a new road abutting the northeastern property line of defendants' property and connecting Pinecroft Road with High Point Road. Construction of the new road necessitated a taking of a new right-of-way along High Point Road of approximately 0.07 acres and two rectangular areas of drainage easement.

As a result of these changes, defendants no longer have access to the ramp leading to and from westbound lanes of I-40 by way of Pinecroft Road, along the southwestern boundary of defendants' property. However, defendants continue to have access to the ramp by way of High Point Road and the newly constructed road, along the northeastern boundary of defendants' remaining property.

During construction of these highway improvements, defendants' access to their remaining property was impaired, but the parties disagree as to the extent of this impairment. Defendants contend that although their access was never totally cut off, it was unreasonably impaired and they should, therefore, be compensated, the compensation to be determined either by submission of a separate issue or as an element of damages under the "before and after" measure prescribed by G.S. 136-112(1). Defendants also argue that because the Lauder right-of-way agreement provided for direct access to the ramp, they should be compensated for the dead ending of Pinecroft Road.

After the Board's complaint was filed, a hearing pursuant to G.S. 136-108 was held to determine all issues except the issue of damages. Defendants sought to introduce Attorney Charles Melvin's expert testimony regarding the chain of title of defendants' property and the effect on title of the Lauder right-of-way agreement. The court refused to admit this testimony; found, as a matter of law, that defendants were not entitled to compensation for the temporary impairment of access during construction, for the dead ending and cul-de-sac of Pinecroft Road, or for the Board's alleged failure to comply with access provisions of the Lauder right-of-way agreement; and ordered the case calendared for trial by jury on the issue of damages. Defendants appealed.

*Attorney General Edmisten, by Special Deputy Attorney General James B. Richmond, for petitioner appellee.*

*Block, Meyland and Lloyd, by Michael R. Pendergraft and A. L. Meyland, for defendant appellants.*

MORRIS, Chief Judge.

[1] The first question for determination is whether the trial court erred in concluding that the Lauder right-of-way agreement

did not reserve for defendants any right of direct access to the ramps leading to I-40 and reserved only abutters' rights of access to Pinecroft Road.

A right-of-way agreement similar to the Lauder right-of-way agreement was dealt with by the Supreme Court in *Abdalla v. Highway Commission*, 261 N.C. 114, 134 S.E. 2d 81 (1964). The Abdalla agreement provided that the grantors "and heirs and assigns shall have no right of access to the highway constructed on said right-of-way except by way of service roads and ramps built in connection with this project in the vicinity of survey station 0 + 00." The plaintiffs did not argue that their access was denied by the Highway Commission. However, they did contend that they should be allowed to designate the route of access. Plaintiffs admitted their access to the highway itself was indirect because they were limited to access "by way of service roads and ramps", but plaintiffs believed they were entitled to direct access to the service roads and ramp on the right-of-way near and parallel to their boundary. The court disagreed, concluding that the right-of-way agreement did not reserve to plaintiffs a right of direct access to the ramp adjacent to remaining property, because a ramp is not constructed for the benefit of abutting property owners; rather, it is designed to connect two heavily travelled highways, where one passes over the other. "For all practical purposes it is a part of the main highway within the meaning of the word 'highway' as set out in the 'Right of Way Agreement.'" *Id.* at 120, 134 S.E. 2d at 85. It was obvious from inclusion of the words "by way of service roads or ramps" that the parties did not contemplate maintaining direct access to the highway. Thus, the Court held that plaintiffs were not entitled to direct access to the ramp.

The facts in *Abdalla* are similar to the facts of this case. First, both right-of-way agreements were executed prior to the enactment of G.S. 136-89.52 which governs the rights of owners of property abutting new highway projects. Thus, neither agreement is controlled by the statute. Second, *Abdalla* involved intersection of a service road with a ramp while this case involves intersection of Pinecroft Road with a ramp. Third, the trial court like the Abdalla court held that the ramp was considered to be part of the highway. Finally, the language of both right-of-way agreements indicated the parties intended to maintain indirect ac-

cess to the highway and not direct access. The right-of-way agreement in this case stated that access to the highway was "by way of ramps", indicating direct access to the highway was not contemplated. Since the ramp is part of the highway, only indirect access to the ramp is required. The trial court correctly determined that defendants have indirect access to I-40 and to the ramp by way of the newly constructed road abutting defendant's property and High Point Road. Thus, the requirements of the right-of-way agreement are satisfied.

Defendants are not entitled to compensation for construction of the cul-de-sac of Pinecroft Road, slightly west of defendants' property, because the Board has provided defendants' remaining property with reasonable and adequate access by the new road abutting defendants' property on the north which connects Pinecroft Road with High Point Road and its interchange with I-40. As long as a landowner is afforded reasonable access to an abutting street or highway, he is not entitled to compensation. Mere inconvenience resulting from circuity of travel is not compensable. *Abdalla v. Highway Commission*, supra; *Board of Transportation v. Warehouse Corp.*, 44 N.C. App. 81, 260 S.E. 2d 696 (1979), *rev'd on other grounds*, 300 N.C. 700, 268 S.E. 2d 180 (1980). Because we agree that the Lauder right-of-way agreement reserved for defendants only a right of indirect access to the ramp leading to I-40 and abutters' rights of access to Pinecroft Road, defendants' first assignment of error is overruled.

[2]   Defendants next argue by their fifth assignment of error that the trial court erred in excluding Attorney Charles Melvin's expert testimony with respect to the chain of title to defendants' property and the effect on title of the Lauder right-of-way agreement. We disagree.

First, testimony regarding the chain of title to defendants' property is irrelevant because title to defendants' property was not in issue. The complaint alleged defendants had title, the answer admits the allegation, and the trial court found defendants own the property in question.

Second, the very issue before the trial court was the construction and interpretation of access rights provided by the Lauder right-of-way agreement. To allow Attorney Melvin to relate his opinion of the proper construction and interpretation of

the agreement would clearly invade the province of the court. Construction of an agreement is a matter of law for the court where the agreement is plain and unambiguous. *Kent Corp. v. Winston-Salem*, 272 N.C. 395, 158 S.E. 2d 563 (1967); *Olive v. Williams*, 42 N.C. App. 380, 257 S.E. 2d 90 (1979). The court, as was its duty to do, determined the legal effect of the agreement. Therefore, the witness's proffered expert testimony was properly excluded by the court.

[3] Defendants' final argument concerns the court's failure to admit evidence as to whether, following condemnation of a portion of their property, there was unreasonable interference with access to their remaining property during the resulting construction on a public road project. Defendants contend that the court erred in concluding that so long as all access to property abutting a highway is not completely cut off for an appreciable period of time during construction, reconstruction, or maintenance of a public street or highway, there is no right to compensation for unreasonable interference either as a separate issue for the jury or as an element to be considered by the jury in determining the difference between the fair market value of the property before and after the taking.

When only a portion of a tract of land is taken, the measure of damages provision of G.S. 136-112(1) governs. The provision follows:

> (1) Where only a part of a tract is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking, with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

In applying this statute, "the fair market value of the remainder immediately after the taking contemplates the project in its completed state and any damage to the remainder due to the user to which the part appropriated may, or probably will be put." *Board of Transportation v. Brown*, 34 N.C. App. 266, 268, 237 S.E. 2d 854, 855 (1977), *aff'd*, 296 N.C. 250, 249 S.E. 2d 803 (1978). This rule of damages provides a landowner compensation only for damages arising from a taking of property and which

flow directly from the use to which the land taken is put. No compensation is awarded for damages which are shared by neighboring property owners and the public and which arise regardless of whether the landowner's property has been condemned. See *Board of Transportation v. Warehouse,* supra. Damages for unreasonable interference with access to defendants' remaining property during construction on a public road project do not arise from the taking of the right-of-way or from the use to which the taken property is put. These damages are noncompensable because they are not unique to defendants. They are shared by defendants in common with the public at large, and the fact that a taking occurs does not make all other damages automatically compensable. *Id.*

The rights of landowners with property abutting a street or highway were set forth in *Wofford v. Highway Commission,* 263 N.C. 677, 140 S.E. 2d 376, *cert. denied,* 382 U.S. 822 (1965), to be as follows:

The landowner has an easement consisting of the right of reasonable access to the particular highway on which his land abuts. He has no constitutional right to have anyone pass by his premises at all; highways are built and maintained for public necessity, convenience and safety in travel and not for enhancement of property along the route. An abutting landowner is not entitled to compensation because of circuity of travel to and from his property; such inconvenience is held to be no different in kind, but merely in degree, from that sustained by the general public, and is *damnum absque injuria.*
. . .

Where a cul-de-sac is created, or the movement of traffic has been limited to one direction, the landowner's right to use the street is no more restricted than is that of other citizens making use thereof, and the landowner has no constitutional right to have others pass his premises. *Barnes v. Highway Commission,* 257 N.C. 507, 126 S.E. 2d 732. The restriction upon the landowner and the restriction upon the public generally, in the use of the street for travel, is no different in kind, but merely in degree. A property owner is not entitled to compensation for mere circuity of travel. Absolute equality of convenience cannot be achieved, and those who purchase

---

**Board of Transportation v. Bryant**

---

and occupy property in the proximity of public roads or streets do so with notice that they may be changed as demanded by the public interest.

263 N.C. at 680-81, 140 S.E. 2d at 379-80.

Although some impairment of access to defendants' property occurred during construction, defendants never contended that their access was totally cut off for any period of time. Defendants wanted to introduce evidence "that during the course of construction, the Highway Department by putting up barricades, by changing the flow of traffic, by putting up no turn signs, eliminated us from using the High Point Road as a means of access to the motel." However, this evidence was irrelevant because reasonable and adequate access to defendants' motel was provided during the construction period by way of other abutting streets or highways. As long as reasonable access to abutting property is maintained, no taking of the landowner's right occurs, and no compensation is awarded for temporary obstruction of access to property during construction. The rationale underlying this general rule is that it is impossible to construct, repair, or maintain streets or highways without obstructing access to abutting property in some way, and "the consequent danger of a multiplicity of suits from the determination of which it might be impossible as a practical matter to exclude mere damage to business, have led the courts to reject claims of this character as a matter of public necessity." Nichols' The Law of Eminent Domain, Revised Third Edition § 6.4442[2], p. 6-252.

Having concluded that defendants have no right to compensation for "unreasonable" interference to access, it is unnecessary to determine whether the right to compensation for "unreasonable" interference is a separate issue for the jury or an element to be considered by the jury in determining damages under G.S. 136-112.

The judgment appealed from is

Affirmed.

Judges WEBB and WHICHARD concur.