IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-473

Filed: 5 April 2016

Mecklenburg County, No. 13-CVS-8602

THE CITY OF CHARLOTTE, a municipal corporation, Plaintiff,

v.

UNIVERSITY FINANCIAL PROPERTIES, LLC, a North Carolina limited liability company f/k/a University Bank Properties Limited Partnership, a North Carolina limited partnership, et al., Defendants.

Appeal by plaintiff from orders entered 17 December 2014 by Judge John W. Bowers in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 November 2015.

*Parker Poe Adams & Bernstein, LLP, by Jonathan E. Hall, Benjamin R. Sullivan, and Nicolas E. Tosco, for plaintiff-appellant.*

*Johnston, Allison & Hord, P.A., by Martin L. White, R. Susanne Todd, and David V. Brennan, for defendant-appellee.*

DAVIS, Judge.

This appeal arises from the condemnation by the City of Charlotte ("the City") of a portion of property owned by University Financial Properties, LLC ("University Financial") in connection with the expansion of the City's light rail system. The primary issued raised by the City on appeal concerns the trial court's determination that the construction of an elevated bridge ("the Bridge") in connection with the light

rail extension project "is part of the taking of University Financial's property in this action." After careful review, we reverse and remand for further proceedings.

**Factual Background**

University Financial owns property located at the intersection of North Tryon Street and W.T. Harris Boulevard in Charlotte, North Carolina. University Financial leases the property to Bank of America, which operates a retail banking services branch from this location.

On 30 April 2013, the City filed a complaint and declaration of taking in Mecklenburg County Superior Court to acquire by condemnation a portion of University Financial's property "in connection with the LYNX Blueline Extension, Northeast Corridor Lightrail Project." University Financial's tract of property comprises 75,079 total square feet, and the City's declaration of taking identified 5,135 square feet of the tract that would be taken in fee simple. The declaration of taking also set forth various easements the City would be acquiring with respect to University Financial's property. The property taken in fee simple was acquired in order to widen the travel lanes of North Tryon Street and accommodate vehicular traffic because the infrastructure for the new light rail line — specifically, the light rail track and the Bridge — will be located in the middle of the existing roadway so as to enable the light rail to travel down the center of North Tryon Street. University Financial filed its answer on 9 April 2014, seeking the trial court's determination of

just compensation for the property taken and the diminution in value of the remaining tract as a result of the taking.

On 24 October 2014, the City filed a motion for the determination of all issues other than damages pursuant to N.C. Gen. Stat. § 136-108. In its motion, the City contended that University Financial was not entitled to compensation for any loss of visibility to its property resulting from the construction of the Bridge because the Bridge was not being built on the condemned property. Consequently, the City requested a hearing under § 136-108 so that the trial court could "determine whether any impact from construction of the bridge within the existing public right-of-way is part of the taking in this action and is therefore compensable."

On 19 November 2014, the City filed a motion for partial summary judgment "on the question of whether an elevated bridge that the City plans to build at the intersection of North Tryon Street and W.T. Harris Boulevard is part of the taking in this case and is an element of the just compensation owed to University Financial." University Financial filed several exhibits with its response to the City's partial summary judgment motion, and the City moved to strike these documents, alleging that they were inadmissible on various grounds.

The trial court held a hearing on the City's motions on 1 December 2014. In three orders entered 17 December 2014, the trial court (1) determined that the construction of the Bridge "is part of the taking of University Financial's property in

this action" and that University Financial is entitled to present evidence of "any and all damages resulting from the impact of the construction of the [light rail], including construction of the Bridge, on its remaining property"; (2) denied the City's motion for partial summary judgment; and (3) denied its motion to strike. The City gave timely notice of appeal.

## Analysis

### I. Appellate Jurisdiction

All three of the trial court's orders that the City seeks to appeal are interlocutory orders. It is well established that interlocutory orders, which are made during the pendency of an action, are generally not immediately appealable. *Duval v. OM Hospitality, LLC*, 186 N.C. App. 390, 392, 651 S.E.2d 261, 263 (2007). If, however, the order implicates a substantial right that will be lost absent our review prior to the entry of a final judgment, an immediate appeal is permissible. *See Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An appeal does not lie . . . from an interlocutory order of the Superior Court, unless such order affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment.").

In condemnation proceedings, our appellate courts have identified certain "vital preliminary issues," such as the trial court's determination of the title or area taken, which affect a substantial right and are subject to immediate appeal. *N.C.*

*Dep't of Transp. v. Stagecoach Village,* 360 N.C. 46, 48, 619 S.E.2d 495, 496 (2005) (citation and quotation marks omitted); *see Dep't of Transp. v. Airlie Park, Inc.,* 156 N.C. App. 63, 66, 576 S.E.2d 341, 343 ("Because defendant's present appeal specifically contests the trial court's determination of the area affected by the taking, which is a 'vital preliminary issue,' such appeal is properly before this Court."), *appeal dismissed,* 357 N.C. 504, 587 S.E.2d 417 (2003). In its order pursuant to N.C. Gen. Stat. § 136-108, the trial court concluded that the City's construction of the Bridge was "part of the taking in this action." Because this ruling concerns the area encompassed by the taking, we have jurisdiction over the City's appeal with regard to the trial court's determination of this issue.[1]

## II. Damages Due to Loss of Visibility

In ruling on the issue of "whether any impact from construction of the bridge within the existing public right of way is part of the taking [in] this action and therefore compensable," the trial court concluded, in pertinent part, as follows: (1) "The construction of the BLE Project[2], including the construction of the Bridge, is part of the taking of University Financial's property in this action"; (2) "Any and all

---

[1] For the reasons explained herein, our ruling on the trial court's § 136-108 issue is dispositive of this entire appeal and grants the City the relief it sought in its motion for partial summary judgment. Moreover, our decision renders moot the City's appeal of the trial court's denial of its motion to strike.

[2] The term "BLE Project" is an abbreviation of the project's full title, which is the LYNX Blue Line Extension Northeast Corridor Light Rail Project.

impact to University Financial's remaining property caused by the construction of the BLE Project, including construction of the Bridge, is compensable"; and (3) "Loss of visibility of University Financial's remaining property resulting from the Bridge is a factor that may be considered by a finder of fact in determining the fair market value of University Financial's remaining property."

Based on the above-quoted conclusions of law, the trial court ordered that University Financial be permitted to present evidence of "any and all damages resulting from the impact of the construction of the BLE Project, including construction of the Bridge, on its remaining property[.]" The City contends that the trial court's ruling is contrary to North Carolina law, and we agree.

When the State, an agency, or a municipality exercises its power of eminent domain to take private property for a public purpose, it must provide just compensation to the property owner for the taking. *Dare Cty. Bd. of Educ. v. Sakaria*, 118 N.C. App. 609, 614, 456 S.E.2d 842, 845 (1995), *aff'd per curiam*, 342 N.C. 648, 466 S.E.2d 717 (1996), *cert. denied*, 519 U.S. 976, 136 L.Ed.2d 325 (1997). When only a portion of the property is taken, "the owners of the land are entitled to receive the difference between the fair market value of the entire tract immediately before the taking and the fair market value of the remaining property after the taking, less any general and special benefits." *Dep't of Transp. v. Bragg*, 308 N.C. 367, 369-70, 302 S.E.2d 227, 229 (1983); *see also* N.C. Gen. Stat. § 136-112(1) (2015). "In determining

the fair market value of the remaining land the owner is entitled to damage which is a consequence of the taking of a portion thereof, that is, for the injuries accruing to the residue from the taking, which includes damage resulting from the condemnor's use of the appropriated portion." *Bd. of Transp. v. Brown*, 34 N.C. App. 266, 268, 237 S.E.2d 854, 855 (1977), *aff'd per curiam*, 296 N.C. 250, 249 S.E.2d 803 (1978). The fair market value of the remaining land after the taking "contemplates the project in its completed state and any damage to the remainder due to the use[ ] to which the part appropriated may, or probably will, be put." *Bragg*, 308 N.C. at 370, 302 S.E.2d at 229 (citation, quotation marks, and emphasis omitted).

> This rule of damages provides a landowner compensation only for damages arising from a taking of property and which flow directly from the use to which the land taken is put. *No compensation is awarded for damages which are shared by neighboring property owners and the public and which arise regardless of whether the landowner's property has been condemned.*

*Bd. of Transp. v. Bryant*, 59 N.C. App. 256, 261-62, 296 S.E.2d 814, 817-18 (1982) (emphasis added).

Here, the trial court concluded that the determination of the fair market value of the remainder of University Financial's property required consideration of the loss of visibility to that property resulting from the Bridge's construction. However, this ruling ignores the fact that (1) University Financial's loss of visibility argument is akin to a property owner's assertion of the right to compensation for a reduction in

the flow of traffic past his property — an argument our appellate courts have repeatedly rejected; and (2) the loss of visibility from the Bridge does not "flow directly from the use to which the land taken is put," *id.*, given that the land taken from University Financial is being utilized for road-widening purposes and not as the location of the Bridge.

A property owner whose land abuts a public roadway — such as University Financial here — has a right of reasonable access to that roadway that cannot be taken without the payment of just compensation. *See Wofford v. N.C. State Highway Comm'n*, 263 N.C. 677, 681, 140 S.E.2d 376, 380 ("The private right of the owner of land abutting a street or highway is an easement appurtenant to the land, consisting of the right of reasonable access to the particular street or highway which his property abuts."), *cert. denied*, 382 U.S. 822, 15 L.Ed.2d 67 (1965). However, so long as the landowner can still access his property (a concern not at issue here), any modifications to the roadway that may alter the flow of traffic are not takings. *See Barnes v. N.C. State Highway Comm'n*, 257 N.C. 507, 516, 126 S.E.2d 732, 738-39 (1962) ("[Landowners] have no property right in the continuation or maintenance of the flow of traffic past their property. They still have free and unhampered ingress and egress to their property. . . . Re-routing and diversion of traffic are police power regulations. Circuity of route, resulting from an exercise of the police power, is an

incidental result of a lawful act. It is not the taking or damaging of a property right." (citation and quotation marks omitted)).

Because a landowner "has no constitutional right to have anyone pass by his premises at all," *id.* at 515, 126 S.E.2d at 738 (citation and quotation marks omitted), the landowner is not owed compensation for any changes in traffic around his property that result from the municipality's actions. *See Moses v. State Highway Comm'n,* 261 N.C. 316, 320, 134 S.E.2d 664, 667 (rejecting petitioners' argument that they were entitled to compensation based on replacement of their direct access to the highway with service road access simply because less traffic passed by their property and noting that "[i]f petitioners could collect because of such diminution in travel by their property, so could every merchant in a town when the Highway Commission constructed a by-pass to expedite the flow of traffic"), *cert. denied*, 379 U.S. 930, 13 L.Ed.2d 342 (1964); *see also Wofford*, 263 N.C. at 684, 140 S.E.2d at 382 (explaining that "[t]he purchaser of a lot abutting a public street, whatever the origin of the street, takes title subject to the authority of the city to control and limit its use, and to abandon or close it under lawful procedure").

We are unable to discern a meaningful distinction between (1) the assertion that a landowner is entitled to compensation because its property has diminished in value due to the *reduction in traffic* caused by a municipality's actions; and (2) University Financial's contention here that it is entitled to compensation for the

decreased value of its property based on the *reduced visibility to passing traffic* caused by the City's construction of the elevated light rail bridge.[3]  Consequently, we hold that the loss in visibility of University Financial's property to passing traffic is not "part of the taking" and that the trial court's order holding otherwise must be reversed.

In arguing to the contrary, University Financial cites our decision in *N.C. State Highway Comm'n v. English*, 20 N.C. App. 20, 200 S.E.2d 429 (1973).  However, its reliance on *English* is misplaced.

In *English*, the North Carolina Highway Commission condemned 1.38 acres of the defendants' 3.24-acre property in order to relocate a road and construct a controlled-access facility to Interstate 40.  *Id.* at 21, 200 S.E.2d at 430.  During the jury trial on just compensation, the defendants presented evidence that the loss of visibility to their remaining land caused by a "fill" that had been constructed so that the highway could pass over a road reduced the fair market value of their remaining property.  *Id.* at 24, 200 S.E.2d at 432.  University Financial argues that *English* "supports loss of visibility as a relevant factor affecting fair market value of a

---

[3] While University Financial argues that the reduction in traffic flow cases are distinguishable from the present case because they involve a governmental body's exercise of its police power to regulate traffic, it has not demonstrated that the City's decision to widen an existing public roadway and construct the Bridge over the W.T. Harris Boulevard intersection is not likewise a valid exercise of police power.  *See generally Barnes*, 257 N.C. at 516, 126 S.E.2d at 738-39 ("Re-routing and diversion of traffic are police power regulations"); *Haymore v. N.C. State Highway Comm'n*, 14 N.C. App. 691, 695, 189 S.E.2d 611, 615 (regulations enacted "so as not to endanger travel upon the highway" constitute valid "exercise of the general police power"), *cert. denied*, 281 N.C. 757, 191 S.E.2d 355 (1972).

remainder" and contends that *English* "sanctioned the use of loss of visibility evidence as relevant to a determination of just compensation."

However, neither party in *English* contested on appeal the admissibility of the loss of visibility evidence. Instead, the issue before this Court concerned the trial court's instructions to the jury. We rejected the defendant landowners' argument that the trial court was required to instruct the jury that pursuant to N.C. Gen. Stat. § 136-89.52 "the Commission may acquire private or public property and property rights for controlled-access facilities . . . including rights of access, air, *view*, and light." *Id.* at 23, 200 S.E.2d at 431. We concluded that such an instruction was inapplicable because

> [t]his sentence of the statute does not create a right of view or sight distance in individual landowners to and from their land. Nor does it suggest that an individual landowner has a right of view or sight distance for which compensation must be paid.

*Id.* Thus, *English* does not provide support for University Financial's position in the present case.

University Financial next argues that because there was an actual physical taking of a portion of its land — namely, the 5,135 square foot tract abutting North Tryon Street taken to expand the roadway — it is entitled to "receive compensation for impacts to its remainder that might not be compensable had a physical taking not occurred." We are not persuaded.

As this Court explained in *Bryant*, "the fact that a taking occurs does not make all other damages automatically compensable." *Bryant*, 59 N.C. App. at 262, 296 S.E.2d at 818. In *Bryant*, the Board of Transportation condemned a portion of the defendants' land in order to make improvements to Interstate 40. *Id.* at 257, 296 S.E.2d at 815. There was a trial on the issue of just compensation, and on appeal, the defendants argued that the trial court had erred in failing to admit evidence that "following condemnation of a portion of their property, there was unreasonable interference with access to their remaining property during the resulting construction . . . . as an element to be considered by the jury in determining the difference between the fair market value of the property before and after the taking." *Id.* at 261, 296 S.E.2d at 817. We rejected this contention, explaining that

> [d]amages for unreasonable interference with access to defendants' remaining property during construction on a public road project do not arise from the taking of the right-of-way or from the use to which the taken property is put. These damages are noncompensable because they are not unique to defendants. They are shared by defendants in common with the public at large, and the fact that a taking occurs does not make all other damages automatically compensable.

*Id.* at 262, 296 S.E.2d at 818. Thus, the fact that a physical taking has occurred is not enough to render compensable injuries that are otherwise recognized as noncompensable that do not arise from the condemnor's use of the particular land taken.

As explained above, a landowner is entitled to compensation when a portion of his land is acquired by condemnation both for the land taken and for "any damage to the remainder due to the use[ ] to which the part appropriated may, or probably will, be put." *Bragg*, 308 N.C. at 370, 302 S.E.2d at 229.

> A use of lands of another which causes annoyance, inconvenience, or damage to the land of the defendant is not compensable. If the defendant were to claim damage from conduct of the condemnor, which conduct did not arise out of use of the defendant's land taken, such damage is suffered by all in the neighborhood generally, and is not the proper subject of compensation.

*City of Kings Mountain v. Cline*, 19 N.C. App. 9, 11, 198 S.E.2d 64, 66 (1973) (internal citation omitted).

Our Supreme Court's decision in *Carolina Power & Light Co. v. Creasman*, 262 N.C. 390, 137 S.E.2d 497 (1964), is instructive. *Creasman* involved the condemnation of a small portion of the defendant landowners' property for the construction of a new steam plant. During the jury trial on just compensation, the defendant landowners were permitted to offer evidence that "the construction, maintenance and operation by petitioner of said steam plant, together with the dam, the lake, the railroad, etc., in a desirable rural residential community, seriously and adversely affected the fair market value of property in the community." *Id.* at 399, 137 S.E.2d at 504. Carolina Power & Light Company appealed from the jury's award of damages and sought a

new trial on just compensation, arguing that this evidence had been improperly admitted by the trial court. *Id.* at 403, 137 S.E.2d at 506.

Our Supreme Court agreed, explaining that while the defendant landowners were entitled to "recover compensation both for the land actually taken and for the permanent injuries to their remaining property caused by the severance and the use to which the land taken may, or probably will, be put[,]" the evidence concerning the damage to the value of the remainder of the property from the steam plant's construction and operation "occur[s] without reference to whether any portion of [the] property is condemned. In short, [these damages] do not result from the taking of a portion of [the] property." *Id.* at 402, 137 S.E.2d at 506. The Court further held that

> consequential damages to be awarded the owner for a taking of a part of his lands are to be limited to the damages sustained by him by reason of the taking of the particular part and of the use to which such part is to be put by the acquiring agency. No additional compensation may be awarded to him by reason of proper public use of other lands located in proximity to but not part of the lands taken from the particular owner. The theory behind this denial of recovery is undoubtedly that such owner may not be considered as suffering legal damage over and above that suffered by his neighbors whose lands were not taken.

*Id.* at 402-03, 137 S.E.2d at 506 (citation and quotation marks omitted).

The same is true here. The property taken from University Financial is being used to widen North Tryon Street. The Bridge that will reduce the visibility of University Financial's remaining property to passing traffic is to be located over the

existing roadway (not on the land taken from University Financial) and is likely to similarly reduce the visibility of other neighboring lots on North Tryon Street. As such, University Financial is not entitled to compensation from the City's use of land that is "not part of the lands taken from [University Financial]" and "may not be considered as suffering legal damage over and above that suffered by [its] neighbors whose lands were not taken." *Id.* (citation and quotation marks omitted). Therefore, for this reason as well, the trial court erred in ruling that University Financial is entitled to present evidence concerning "all damages resulting from the impact of the construction of the BLE Project, including construction of the Bridge, on its remaining property" during the trial on just compensation.

**Conclusion**

For the reasons stated above, we reverse the trial court's ruling that the Bridge's impact on University Financial's remaining property is compensable and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judges STEPHENS and STROUD concur.