THE HAJMM COMPANY, PLAINTIFF v. HOUSE OF RAEFORD FARMS, INC.;
E. MARVIN JOHNSON, DEFENDANTS

No. 8816SC574

(Filed 6 June 1989)

1. **Corporations § 13— revolving fund certificate—refusal to redeem—breach of bylaws**

     The evidence was sufficient to support plaintiff's claim that defendants violated the bylaws of the corporate defendant, an agricultural cooperative, by refusing to retire a revolving fund certificate issued to plaintiff by defendant corporation in exchange for stock in a predecessor corporation after defendant corporation had retired other certificates in the same series.

2. **Corporations § 13— revolving fund certificate—judgment for full amount**

     The trial court did not err in entering judgment for plaintiff for the full amount of a revolving fund certificate rather than permitting the jury to consider whether other certificates were retired by the corporate defendant at full or only partial value where the corporate defendant's bylaws required the retirement of each series of certificates to be either in full or on a pro rata basis, the evidence showed that the holders of other certificates in the same series received full value, and plaintiff was thus entitled to full value.

1

3. **Corporations § 13— revolving fund certificate—refusal by directors to redeem—unreasonable exercise of discretion—jury question**

A jury question on the issue of whether the corporate defendant's board of directors unreasonably exercised its discretion in refusing to redeem plaintiff's revolving fund certificate was presented by plaintiff's evidence of the corporate defendant's strong financial position and testimony by the corporation's president that the corporation may never pay the certificate.

4. **Corporations § 25— revolving fund certificate—refusal to redeem—bylaws as basis of action**

Defendant corporation's bylaws could serve as a basis for plaintiff's action based on the corporation's refusal to retire a revolving fund certificate issued to plaintiff where the certificate constituted a contract between plaintiff and the corporation upon which the corporation conditionally promised to pay plaintiff $387,500 in consideration for stock plaintiff held in a predecessor corporation, and the bylaws were incorporated into and constituted additional terms of the parties' contract and thus were more than internal rules for the corporation.

5. **Corporations § 13— revolving fund certificate—fiduciary duty of directors and president**

The trial court properly submitted to the jury an issue as to whether the directors and president of defendant corporation owed a fiduciary duty to plaintiff holder of a revolving fund certificate where the certificate was issued to plaintiff in consideration for the stock plaintiff held in a predecessor corporation; since the certificate was redeemable at the corporation's discretion and the corporation refused to reveal financial information about itself to plaintiff, plaintiff had the right to expect the corporation to exercise its discretion in good faith; and plaintiff was not a pure creditor of defendant corporation but had some characteristics of a shareholder in that the certificate was part of defendant corporation's original capitalization, was listed under stockholders' equity on the corporation's balance sheet, and was junior and subordinate to all other debts of the corporation upon dissolution of the corporation.

6. **Fiduciaries § 1; Fraud § 7— breach of fiduciary duty—prima facie case—shift of burden of proof**

The trial court properly instructed the jury that once plaintiff established a prima facie case that defendants owed plaintiff a fiduciary duty and breached that duty, which amounted to constructive fraud, the burden of proof shifted to defendants to prove that they acted in an open, fair and honest manner.

7. **Evidence § 47— expert testimony—opinion on ultimate issue —admissibility**

The trial court did not err in the admission of testimony by an expert witness that directors of defendant corporation abused their discretion in failing to redeem plaintiff's revolving fund certificate since the testimony did not constitute an opinion on a legal conclusion or standard for which there is a specific legal meaning not readily apparent to the witness; the court gave a precautionary instruction on the weight to be accorded expert testimony; and the complexity of this case required specialized knowledge for an understanding of the use of revolving fund certificates by agricultural cooperatives. N.C.G.S. § 8C-1, Rule 704.

8. **Damages § 11.1— breach of fiduciary duty—constructive fraud —punitive damages**

The refusal of defendant corporation and its president to redeem plaintiff's revolving fund certificate in violation of their fiduciary duty to plaintiff, which amounted to constructive fraud, was a sufficient basis for the imposition of punitive damages.

9. **Unfair Competition § 1— revolving fund certificate—refusal to redeem—unfair trade practice—sufficiency of complaint**

Plaintiff's complaint was sufficient to state a claim against a corporation and its president for an unfair trade practice where it alleged: defendants breached a fiduciary duty to plaintiff by refusing to redeem a revolving fund certificate issued to plaintiff in exchange for stock in a predecessor corporation; defendants manipulated the corporation's income to the benefit of the individual defendant's family and to the detriment of plaintiff's interest; defendants' actions were an abuse of discretion and a violation of the corporation's bylaws; and defendants' acts were in or affecting commerce.

10. **Unfair Competition § 1; Election of Remedies § 1.1— unfair trade practice—punitive or treble damages—election after verdict**

Plaintiff is not entitled to recover both treble and punitive damages for an unfair trade practice but may elect its remedy after the court has determined whether to treble the compensatory damages.

Judge GREENE dissenting.

APPEAL by defendants and cross appeal by plaintiff from Judgment of *Judge Herbert O. Phillips, III*, entered 29 December 1987, *nunc pro tunc* 17 December 1987, in the SCOTLAND County Superior Court. Heard in the Court of Appeals 9 December 1988.

*Petree Stockton & Robinson, by G. Gray Wilson and R. Rand Tucker, for defendant appellants, cross-appellees.*

*Adams, McCullough & Beard, by William H. McCullough, Charles C. Meeker and John J. Butler, for plaintiff appellee, cross-appellant.*

COZORT, Judge.

Plaintiff sued defendants House of Raeford Farms, Inc. (Raeford), and E. Marvin Johnson for their refusal to retire a revolving fund certificate issued to plaintiff by Raeford in exchange for stock plaintiff sold to Raeford. Plaintiff asserted claims of relief alleging that defendants: (1) violated Raeford's by-laws by refusing to retire plaintiff's certificate after retiring other certificates in the same series as plaintiff's; (2) breached a fiduciary duty owed plaintiff; and (3) committed an unfair or deceptive trade practice. The trial court granted defendants' motion to dismiss the unfair or deceptive trade practice claim for failure to state a claim upon which relief can be granted. The other issues went to the jury, which found for plaintiff. The judge awarded plaintiff $387,500 in actual damages, and the jury awarded plaintiff $100,000 in punitive damages. Plaintiff and defendants appeal. The primary issues submitted on appeal by defendants are: (1) whether defendants' motions for directed verdict and judgment notwithstanding the verdict were properly denied and the issues properly submitted to the jury; (2) whether there was sufficient evidence to create a jury issue on partial redemption; (3) whether defendants owed plaintiff a fiduciary duty; (4) whether plaintiff's expert testimony on breach of fiduciary duty

was properly admitted; and (5) whether there was sufficient evidence to submit to the jury on the issue of punitive damages. The plaintiff contends that the trial court erred in granting defendants' motion to dismiss plaintiff's unfair or deceptive trade practice claim. In defendants' appeal, we find no error. In plaintiff's appeal, we find the trial court erred in dismissing the unfair or deceptive trade practice claim, and we remand for a new trial on that issue.

The HAJMM Company, plaintiff herein, is a limited partnership engaged in the business of agricultural marketing. Defendant Raeford is an agricultural cooperative engaged in processing turkeys and other poultry. Defendant Johnson is President and Chairman of the Board of Raeford. Raeford was formed in 1975 when plaintiff and two other turkey producers, Stone Brothers and Nash Johnsons and Sons, Inc. (NJS), sold their stock in Raeford Turkey Farms, Inc. (RTF), to defendant Raeford. Plaintiff held a 25% share, Stone Bros. held a 25% share, and NJS held a 50% share in RTF. For its stock plaintiff was issued a "Class B—Series 1975 Revolving Fund Certificate" in the amount of $387,500. Raeford issued a Class B—Series 1975 certificate to Stone Bros. in the amount of $387,500 for its 25% share of RTF and issued a Class B—Series 1975 certificate to NJS in the amount of $750,000 in exchange for its 50% share in RTF. In the same year, Raeford also issued Class A—Series 1975 certificates to other turkey producers at the same time the three Class B certificates were issued.

In 1978 Raeford redeemed and cancelled the Class A—Series 1975 certificates. The same year, Raeford retired the Class B—Series 1975 certificate originally issued to Stone Bros., who negotiated its certificate to FCX, Inc. In its 1984 financial statement Raeford discounted to zero value the Stone Bros./FCX certificate *and* the certificate to NJS. Raeford subtracted the value of the Stone Bros./FCX and NJS Class B—Series 1975 certificates from the total amount owed on other certificates, thereby reducing stockholder's equity. Plaintiff's Class B—Series 1975 certificate was not redeemed at that time and continues to be shown as part of stockholder's equity in Raeford's financial statements. On or about 4 February 1986 plaintiff made a formal demand to defendants to redeem plaintiff's certificate for $387,500. Citing provisions in Raeford's by-laws giving them the sole discretion to decide whether to retire plaintiff's certificate, defendants refused plaintiff's request. Plaintiff filed suit in March of 1986.

HAJMM CO. v. HOUSE OF RAEFORD FARMS

[94 N.C. App. 1 (1989)]

The trial court submitted seven issues to the jury, which were answered as follows:

1. Did the defendant, House of Raeford Farms, Inc., breach its bylaws by refusing to retire the revolving fund certificate of the plaintiff, HAJMM, in the reasonable exercise of its discretion?

Yes.

2. Did the defendant, House of Raeford Farms, Inc., breach its bylaws by retiring any of the revolving fund certificates in the same annual series as that of the plaintiff, HAJMM, and refusing to retire that of the plaintiff, HAJMM?

Yes.

3. Do the defendants, E. Marvin Johnson and Raeford Farms, Inc., owe a fiduciary duty to the plaintiff, HAJMM?

Yes.

4. If so, was their refusal to retire HAJMM's revolving fund certificate an open, fair and honest transaction?

No.

5. In what month and year did the breach or violation occur?

March, 1986.

6. In your discretion, what amount of punitive damages, if any, should be awarded to the plaintiff, HAJMM from the defendant E. Marvin Johnson.

None.

7. In your discretion what amount of punitive damages, if any, should be awarded to the plaintiff, HAJMM from the defendant, House of Raeford Farms, Inc.?

$100,000.

The trial court determined that plaintiff should recover the full amount of the certificate, $387,500, from both defendants. The court entered judgment for $387,500 actual damages against both defendants and $100,000 punitive damages against Raeford. Defendants and plaintiff entered timely notices of appeal. We consider defendants' appeal first.

HAJMM CO. v. HOUSE OF RAEFORD FARMS

[94 N.C. App. 1 (1989)]

We initially consider defendants' argument that the trial court erred in denying defendants' motion for directed verdict and defendants' motion for judgment notwithstanding the verdict. Defendants' motion for directed verdict should be granted only if the trial judge concludes that no reasonable juror could find for plaintiff. *West v. Slick*, 313 N.C. 33, 40, 326 S.E. 2d 601, 606 (1985). In considering the defendants' motion all conflicts in the evidence must be resolved in favor of plaintiff and the evidence must be viewed in a light most favorable to plaintiff. *Id.* The standard of review is the same for a motion for judgment notwithstanding the verdict. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 369, 329 S.E. 2d 333, 337 (1985).

[1] Defendants contend that plaintiff offered insufficient evidence to prove that Raeford breached its by-laws by retiring certificates in the same series as plaintiff's while refusing to retire plaintiff's certificate. In the alternative, defendants argue that even if the certificates were of the same series, the trial court should have submitted to the jury an issue on whether Raeford retired other certificates for full or partial value. We reject both arguments.

Plaintiff's evidence tended to show that defendant Raeford issued identical "Class B—Series 1975" Revolving Fund Certificates to plaintiff and to Stone Brothers when it was formed in 1975. Both certificates were in the amount of $387,500. The remaining 50% of RTF was owned by NJS. Defendant Johnson owned 80% of NJS and served as its president. Defendant Johnson is also Chief Executive Officer of defendant Raeford, a post he has held since 1978. NJS is one of defendant's largest turkey suppliers. In exchange for NJS's 50% share of RTF, defendant Raeford issued the same "Class B—Series 1975" certificate to NJS that had been issued to plaintiff and Stone Brothers, except NJS's certificate was in the amount of $750,000. Defendant Raeford also issued "Class A—Series 1975" certificates to other turkey producers in 1975.

Plaintiff's evidence also tended to show that Raeford refused plaintiff's demand to pay its certificate even though Raeford paid an identical Stone Brothers' certificate in 1978. Raeford was less solvent in 1978 than in 1986 when plaintiff made its demand. Moreover, Raeford discounted NJS's $750,000 certificate on its books to zero value in 1984, even though that certificate was nearly twice the amount of plaintiff's. The Class A—Series 1975 certificates were also paid off in 1978. Defendants argue that the Class A

certificates were of a different series than the Class B certificates because the Class A certificates were issued at a different time and to a different class of people, patron members of Raeford, not former owners of RTF which held the Class B certificates.

Raeford's by-laws support plaintiff's argument that the Class A and Class B certificates are of the same series. The by-laws provide as follows:

> Such certificates shall be issued in *annual series, each certificate in each series upon its face being identified by the year in which it is issued; and each series shall be retired fully or on a prorata [sic] basis*, only at the discretion of the board of directors of the association, *in the order of issuance by years as funds are available for that purpose*. (Emphasis supplied.)

The by-laws require designation of certificates by "annual series." Both Class A and Class B certificates are identified with the caption "Series 1975." Class A and B certificates were, therefore, the same series. We find the evidence sufficient to support plaintiff's claim that defendants breached Raeford's by-laws.

[2] Defendants contend alternatively that the trial court erred in failing to instruct the jury that they should determine whether Stone Bros., NJS, and the Class A certificates were retired at full value or on a pro rata basis. Defendants maintain that the trial court's decision to enter judgment for the full amount of the certificate, rather than permitting the jury to consider the amount, amounted to an improper directed verdict on damages.

Defendant Raeford's by-laws require that the retirement of each *series* must be either in full or on a pro rata basis. Thus, if the Class A and B holders received full value, then plaintiff was entitled to receive full value. The evidence is clear that Class A holders received $100 each, plus cancellation of their promissory notes to Raeford, in exchange for Raeford taking back the certificates. Moreover, Raeford discounted the entire value of all Series 1975 certificates, except plaintiff's, in its 1987 Financial Statement. For the purposes of Raeford's books, the entire 1975 Series was considered paid in full, except plaintiff's certificate. Finally, concerning the certificates of Stone Bros./FCX and NJS, Raeford paid FCX $950,000 in 1978 for the certificate and other obligations and passed a corporate resolution providing that the actions would

"thus retire, all interests of FCX in the association . . . ." FCX then transferred "all its right, title and interest" in the Class B instrument to Raeford. As for the NJS certificate, Raeford discounted the certificate's full value on its books. In short, there is simply no evidence that Class A and B holders, except plaintiff, received anything but full value. The jury was therefore properly instructed to find that plaintiff should receive full value if it found defendants violated Raeford's by-laws or defendants unreasonably denied plaintiff's demand.

[3] Next defendants challenge the sufficiency of plaintiff's evidence on whether Raeford acted unreasonably in exercising its discretion not to redeem plaintiff's certificate. The certificates were redeemable, if at all, defendants contend, in the sole discretion of Raeford's board as the by-laws provided. Defendants note the cyclical nature of the poultry business and the Board's desire to become more competitive by purchasing new plant and equipment as factors they considered in declining plaintiff's demand for payment. Similarly, defendants point out that the certificates by their terms were junior and subordinate to all other corporate debts. Defendants argue that Raeford had to consider the effect on other creditors of paying a junior creditor's debts, as well as a balance sheet showing current liabilities and long-term debts exceeding $5,000,000.

On the issue of the subordinate nature of the debt, plaintiff offered expert testimony from Dr. James Baarda that the "junior and subordinate" language meant that when the cooperative dissolves, all other debts are paid before the certificates. Defendants' expert agreed with Dr. Baarda that the "subordinate" language did not mean payment of the certificate was to be withheld if the corporation had other debts. Defendants' argument seems disingenuous in light of the payment to the Class A holders, the redemption of the Stone Brothers certificate, as well as the bookkeeping cancellation of the NJS certificate. The total value of these certificates far exceeded plaintiff's certificate.

Plaintiff's evidence of Raeford's strong financial position, together with testimony of defendant Johnson that Raeford may never pay the certificate, supported plaintiff's claim that the Board unreasonably exercised its discretion in refusing to pay plaintiff's certificate. Plaintiff's evidence showed that Raeford's net worth nearly quadrupled in five years from $6.8 million in 1983 to $27 million in 1987. In 1986, the year plaintiff demanded payment, plain-

tiff's net earnings were $6.1 million. While Raeford spent $6.5 million in 1987 on a new plant and equipment, Raeford was able to loan defendant Johnson $394,000 and invest $3.4 million of excess cash in a securities portfolio in 1987. Nevertheless, defendant Johnson testified that he told Mr. Hervey Evans, one of plaintiff's principals, "I might not never pay it [the certificate]." An attorney for the Federal Land Bank testified that Mr. Johnson told him, "It's not bearing any interest, so there's really no reason to pay it. It's sort of like owing money to yourself." Likewise, at the director's meeting discussing plaintiff's request to pay the certificate, Mr. Johnson stated that the Board "decided that we didn't need to bother with it; it shouldn't be paid, it wasn't good business . . . ." As to Raeford's by-laws governing the certificates, Mr. Johnson stated: "[T]he by-laws wasn't [sic] that important to me. I, I've never read them all the way through. I just glanced at them, that's about it."

We agree with defendants that the mere financial ability of a corporation to pay is insufficient to prove an abuse of discretion. See, e.g., Claassen v. Farmers Grain Co-op., 208 Kan. 129, 490 P. 2d 376 (1971). We are also mindful that the business judgment rule protects corporate directors from being judicially second-guessed when they exercise reasonable care and business judgment. The directors "are not guarantors that they will make no mistakes in the management of corporate business." R. Robinson, North Carolina Corporation Law and Practice § 12-6 at 178 (3d ed. 1983). Nevertheless, on the facts of this case, we find that plaintiff's evidence was sufficient to go to the jury on the question of whether Raeford unreasonably exercised its discretion in refusing to pay plaintiff's certificate.

[4] Next defendants maintain that the trial judge erred in submitting the issue of breach of Raeford's by-laws because by-laws are intracorporate rules of governance which cannot serve as a basis for plaintiff's cause of action. We note initially that defendants requested that the jury be instructed to address whether defendants abused their discretion in refusing to retire plaintiff's certificate. The trial court instructed the jury as defendants requested. Defendants cannot now complain because the trial court granted their request. Jennings Glass Co. v. Brummer, 88 N.C. App. 44, 50, 362 S.E. 2d 578, 582 (1987), disc. review denied, 321 N.C. 473, 364 S.E. 2d 921 (1988). Second, plaintiff's certificate ·constituted a contract between plaintiff and Raeford upon which Raeford condi-

HAJMM CO. v. HOUSE OF RAEFORD FARMS

[94 N.C. App. 1 (1989)]

tionally promised to pay plaintiff $387,500 in consideration for the stock plaintiff held in Raeford's predecessor corporation, RTF. *See, e.g., Mezzanotte v. Freeland,* 20 N.C. App. 11, 17, 200 S.E. 2d 410, 414 (1973), *cert. denied,* 284 N.C. 616, 201 S.E. 2d 689 (1974). Raeford's by-laws were incorporated into plaintiff's certificate. Those by-laws constituted additional terms of the parties' contract and therefore more than internal rules for defendant Raeford. Defendants' argument is without merit.

[5] Defendants also contend the trial court erred in submitting to the jury the issue of whether defendants owed plaintiff a fiduciary duty. According to defendants the certificate held by plaintiff was an instrument of debt. They maintain that no fiduciary duty exists in a debtor-creditor relationship.

A fiduciary duty " 'exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.' " *Stone v. McClam,* 42 N.C. App. 393, 401, 257 S.E. 2d 78, 83, *cert. denied,* 298 N.C. 572, 261 S.E. 2d 128 (1979) (citation omitted). We find the facts of this case sufficient to show that plaintiff placed a special confidence and trust in Raeford and its directors. Plaintiff accepted the certificate as partial consideration for the 25% share plaintiff held in RTF. Plaintiff's interest was in turn transferred to Raeford as successor in interest to RTF, and Raeford recognized the certificate as a capital contribution on its balance sheet. Furthermore, since the certificate was redeemable at Raeford's discretion and since Raeford refused to reveal financial information about itself to plaintiff, plaintiff had the right to expect Raeford to exercise its discretion in good faith.

Also, we are unpersuaded that the certificate was a pure debt instrument. The existence of a fiduciary relationship is not contingent upon a technical or legal relationship. *Moore v. Bryson,* 11 N.C. App. 260, 265, 181 S.E. 2d 113, 116 (1971). Shareholders of a corporation are owed a fiduciary duty by that corporation's officers and directors. N.C. Gen. Stat. § 55-35 (1982). The issuance of the revolving fund certificate has some characteristics of a corporation/shareholder relationship. First, the certificate was originally issued in exchange for stock held in Raeford's predecessor, RTF, as partial consideration for plaintiff's capital contribution to Raeford. Plaintiff's certificate, along with similar certificates to Stone Bros.

and NJS, was part of Raeford's original capitalization. *See First Citizens Bank and Trust Co. v. Parker*, 225 N.C. 480, 485, 35 S.E. 2d 489, 492 (1945) ("The fiduciary character of the debt does not depend upon its form but the manner of its origin and the acts by which it is incurred . . . ."). Second, Raeford listed the certificates under stockholder's equity on its balance sheet as it did for common stock. Finally, like common stock, the certificate was junior and subordinate to all other debts of Raeford, secured or unsecured. It is fundamental to corporate law that if the corporation dissolves, the common stockholders receive a distribution, if at all, after all the debts have been paid. 19 Am. Jur. 2d *Corporations* § 2866 at 648 (1986).

**[6]** Defendants next challenge the instruction given to the jury on the fiduciary duty issue on the grounds that the trial court erred in shifting the burden of proof to defendants to prove that a breach of that duty did not occur. We find no error. Once plaintiff established a *prima facie* case that defendants owed plaintiff a fiduciary duty and that duty was breached, which amounted to constructive fraud, the burden of proof shifted to defendants to prove that they acted in an open, fair and honest manner, and the court so instructed the jury. *See Sanders v. Spaulding & Perkins, Inc.*, 82 N.C. App. 680, 681, 347 S.E. 2d 866, 867 (1986).

**[7]** We turn now to defendants' contention that the trial court erred in admitting plaintiff's expert testimony from Dr. James Baarda. Defendants contend Dr. Baarda's testimony embraced ultimate legal conclusions and thus amounted to an impermissible instruction to the jury and usurpation of the jury's duty.

N.C. Gen. Stat. § 8C-1, Rule 704 (1986) provides that "[t]estimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Our Supreme Court has stated that "an expert may not testify that a particular legal conclusion or standard has or has not been met, at least *where the standard is a legal term of art which carries a specific legal meaning not readily apparent to the witness.*" *State v. Ledford*, 315 N.C. 599, 617, 340 S.E. 2d 309, 321 (1986) (emphasis added).

Defendants first argue that the trial court should have excluded Dr. Baarda's testimony that the directors abused their discretion in failing to redeem plaintiff's certificate. We do not believe the testimony at issue constituted testimony on a legal conclusion or

standard for which there is a specific legal meaning such that exclusion was required. The existence or nonexistence of a fiduciary duty was a question of *fact* for the jury. The jury had to determine whether plaintiff had placed special confidence and faith in defendants to act in plaintiff's interests. *See Stone*, 42 N.C. App. at 401, 257 S.E. 2d at 83. We further find that the trial judge instructed the jury, in part, as follows: "[Y]ou should consider the opinion of an expert witness, but you are not bound by it." He also instructed, "You must . . . apply the facts as you find them to be to the law as I am about to give it to you." *Accord*, 3 Weinstein's Evidence ¶ 704 [02] at 704-16 (1988) *and United States v. Fogg*, 652 F. 2d 551, 556-67 (5th Cir. 1981), *cert. denied*, 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed. 2d 162 (1982). (Applying Federal Rule 704—which is identical to North Carolina's Rule 704—the court held that no error occurred where an IRS agent stated a legal conclusion on defendant's culpability because of the court's precautionary instructions to the jury on the weight to be afforded expert testimony.) We also believe that the complexity of this case and the specialized knowledge necessary to understand the use of revolving fund certificates in agricultural cooperatives distinguishes this case from those relied on by defendants. *See Fogg*, 652 F. 2d at 557 (5th Cir. 1981) (the court considered the complexity of the case in affirming the use of expert testimony even though it embraced a legal conclusion). The cases relied on by defendants involve less complex issues such as gross negligence (*Murrow v. Daniels*, 85 N.C. App. 401, 355 S.E. 2d 204, *rev'd on other grounds*, 321 N.C. 494, 364 S.E. 2d 281 (1988)); the construction and interpretation of a right-of-way agreement (*Board of Transportation v. Bryant*, 59 N.C. App. 256, 296 S.E. 2d 814 (1982)); and whether an easement by implication existed (*Williams v. Sapp*, 83 N.C. App. 116, 349 S.E. 2d 304 (1986)). We find no error in the admission of Dr. Baarda's testimony.

[8] Defendants next contend that the trial court erred in submitting a punitive damages issue to the jury because plaintiff failed to show aggravated or tortious conduct other than defendants' mere refusal to pay. We disagree. In answering the third and fourth issues "Yes," the jury found that defendants had a fiduciary duty to plaintiff and their refusal to retire plaintiff's certificate was not an open, fair or honest transaction. Defendants' breach of their fiduciary duty to plaintiff, which also amounted to evidence sufficient to prove constructive fraud, justified punitive damages.

*See Sanders*, 82 N.C. App. at 681, 347 S.E. 2d at 868 (1986). Defendants' assignment of error is overruled.

Defendants have raised several other issues on appeal. We have carefully reviewed those arguments, and we find they entitle defendants to no relief and do not merit further discussion. *See State v. Tomblin*, 276 N.C. 273, 277, 171 S.E. 2d 901, 904 (1970).

[9]   We now turn to plaintiff's cross appeal. Plaintiff's sole assignment of error alleges the trial court erred in the dismissal of its unfair or deceptive trade practices claim for failure to state a claim upon which relief can be granted. Moreover, plaintiff contends that the jury's factual determination that defendants' refusal to redeem was not an open, fair or honest transaction established an unfair or deceptive trade practice as a matter of law. We agree that the trial judge erred in dismissing plaintiff's unfair or deceptive trade practice claim. We do not agree, however, that plaintiff has established that claim as a matter of law.

The standard of review for the granting of defendants' N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) motion requires us to test the legal sufficiency of plaintiff's claim. The allegations in plaintiff's complaint are treated as true. *White v. White*, 296 N.C. 661, 667, 252 S.E. 2d 698, 702 (1979). In its complaint plaintiff alleged that defendants owed plaintiff a fiduciary duty and that defendants breached that duty when they refused to redeem plaintiff's certificate. Plaintiff alleged that the refusal was unreasonable. Plaintiff alleged that defendants manipulated Raeford's income to the benefit of defendant Johnson's family and to the detriment of plaintiff's interest. Plaintiff alleged that defendants' actions were inequitable, arbitrary, in bad faith, were an abuse of discretion, and a violation of Raeford's by-laws. Plaintiff further alleged that defendants' acts were in or affecting commerce. These allegations, though not denominated as such, are sufficient to allege constructive fraud. Therefore, the allegations were sufficient to allege a claim of unfair or deceptive trade practice. *Spence v. Spaulding and Perkins, Ltd.*, 82 N.C. App. 665, 668, 347 S.E. 2d 864, 866 (1986).

We do not agree, however, with plaintiff's argument that we should find that, in the case below, the unfair or deceptive trade practice has been established as a matter of law. Plaintiff urges this Court to treble the damages and remand the cause only for consideration of attorney fees. In rejecting this argument, we note initially that the case was not tried below with any consideration

given to an unfair or deceptive trade practice claim. Had the claim been present during trial, it could have profoundly affected defendants' preparation for trial and the tactics pursued during trial. It would be manifestly unfair to declare, at this stage of the proceedings, that the claim was proven as a matter of law with no contrary result possible, even though the claim was not prosecuted or defended as such below.

We also reject plaintiff's argument because the jury made no findings concerning whether defendants' practices were in or affecting commerce and whether the acts had an impact on plaintiff. N.C. Gen. Stat. § 75-1.1 (1988); *Wilder v. Squires*, 68 N.C. App. 310, 319, 315 S.E. 2d 63, 68, *disc. rev. denied*, 311 N.C. 769, 321 S.E. 2d 158 (1984).

> Ordinarily, it would be for the jury to determine the facts, and based on the jury's finding, the court would then determine as a matter of law whether the defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce.

*Hardy v. Toler*, 288 N.C. 303, 310, 218 S.E. 2d 342, 346-47 (1975). Since the jury has not made the requisite findings, we will not speculate, based on the findings made on plaintiff's other claims, whether plaintiff has established its claim as a matter of law.

[10] On remand the trial court must consider the factual findings already made by the jury together with additional factual findings the jury will make under proper instructions in accordance with the statutes and case law relative to unfair or deceptive trade practice claims. Then the trial court must determine whether defendants engaged in unfair or deceptive trade practices. If the trial court finds that defendants engaged in an unfair or deceptive trade practice, plaintiff is entitled to have its actual damages trebled and may be entitled to attorney fees in the trial court's discretion, if the court finds that defendants' act or practice was willful and their refusal to resolve the matter was unwarranted. N.C. Gen. Stat. §§ 75-16 and 75-16.1 (1988). Plaintiff would then elect to recover either punitive damages or treble damages. Plaintiff is not entitled to recover both treble and punitive damages under § 75-16. *Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 53, 362 S.E. 2d 578, 584 (1987), *disc. rev. denied*, 321 N.C. 473, 364 S.E. 2d 921 (1988).

In summary, in defendants' appeal we find no error. In plaintiff's appeal we vacate the order granting defendants' Rule 12(b)(6)

motion as to unfair or deceptive trade practices, and we remand for a new trial on that claim.

No error in part; vacated and remanded in part.

Judge PHILLIPS concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I dissent from the majority's ruling on the admissibility of Dr. Baarda's testimony that the defendants "abused their discretion" and "breached" certain "fiduciary duties." Despite the adoption of Rule 704, Dean Brandis has stated the continuing validity of state precedent that an expert may not opine on whether a legal standard has or has not been fulfilled in a specific case:

> In attempting to relate the facts it often happens that a witness will use words which, though familiar to the layman's vocabulary, also have a legal meaning. Whether such usage will violate the opinion rule depends upon the sense in which the words are used and the nature of the issues in the case. Thus a witness may state that he was in 'possession' of land or chattel . . . or that the prosecutrix was 'raped' . . . if the words are employed in a popular sense to describe the facts rather than their legal consequences. *Where the legal relations growing out of the facts are in dispute, and the witness's words appear to describe the relations themselves, the same words may be objectionable.* Under these circumstances it is improper for a witness to testify whether a transaction was 'bona fide' or induced by 'fraud' . . . or whether he was an 'agent' . . . and a witness may not testify to the legal effect of a contract or to its meaning when that is a question for the court to decide from the writing itself; but he may testify to his own intention and understanding *where they are relevant.*

1 H. Brandis, *Brandis on North Carolina Evidence* Sec. 130 at 579-82 (3rd ed. 1988) (emphasis added).

It is true that the federal courts have been generally reluctant to overrule a trial judge who allows expert opinion that arguably states relevant legal standards have been met. *E.g., Specht v. Jensen*, 832 F. 2d 1516, 1527 (10th Cir. 1987) (en banc) (permit-

ting constitutional expert to state opinion on dispositive issue whether "search" occurred under Fourth Amendment). However, even after this state's adoption of Rule 704, our own Supreme Court and this court have followed a more conservative course which confirms Dean Brandis's observation. *See, e.g., State v. Weeks,* 322 N.C. 152, 167, 367 S.E. 2d 895, 903 (1988) (psychiatric testimony that defendant did not act in "cool state of mind" and was unable to conform behavior to legal requirements improperly stated legal standard had not been met); *State v. Ledford,* 315 N.C. 599, 340 S.E. 2d 309 (1986) (expert precluded from stating that injuries were "proximate cause" of death); *State v. Smith,* 315 N.C. 76, 337 S.E. 2d 833 (1985) (dictum) (court noted it would bar expert testimony that defendant "raped" victim in rape trial); *Murrow v. Daniels,* 85 N.C. App. 401, 355 S.E. 2d 204, *rev'd on other grounds,* 321 N.C. 494, 364 S.E. 2d 392 (1987) (expert's opinion that defendant's lack of security was "gross negligence" was improper legal conclusion) (cited with approval by Supreme Court in *Weeks*); *Williams v. Sapp,* 83 N.C. App. 116, 349 S.E. 2d 304 (1986) (error to allow attorney to give expert opinion that plaintiff was legally entitled to easement by implication); *but see State v. Franks,* 262 N.C. 94, 124 S.E. 2d 537 (1962) (where defendant charged with selling unregistered securities, expert could state that debentures must be registered under state securities law).

Dr. Baarda testified as an expert with degrees in law and agricultural economics. He testified extensively concerning the nature of agricultural cooperatives and the use of revolving certificates for their financing. The majority summarizes Dr. Baarda's testimony as "testimony that the directors abused their discretion in failing to redeem plaintiff's certificate." That simple paraphrase does not do justice to the breadth of Dr. Baarda's extensive testimony concerning the legal effect of key provisions of the certificates, as well as Dr. Baarda's opinion that defendants abused their discretion and breached their fiduciary duties to plaintiff in failing to redeem the certificates:

Q. All right. I am trying to deal with the subject of discretion, Dr. Baarda. What discretion is available to the Board under this Section [of the certificate] that you are reading from?

. . .

A. That this cooperative gives the discretion to the Board of Directors to redeem.

**HAJMM CO. v. HOUSE OF RAEFORD FARMS**

[94 N.C. App. 1 (1989)]

Q. I'd like to ask whether you have an opinion as to whether there is an additional type of discretion permissible to the Board of Directors?

A. (Reading over paragraph.) Yes, there is an additional discretion.

Q. What is that discretion?

A. [The] discretion . . . to revolve [the certificates] out of order . . . under some extraordinary circumstances . . . spelled out in the by-laws [such as] to compromise or settle the dispute between the owner thereof and the association, and then for other purposes such as settling an estate or when an owner moves from the territory.

. . .

Q. Based upon your experience, and your review of materials which you have previously testified to, do you have an opinion satisfactory to yourself as to whether the Board of Directors of Raeford abused its discretion in failing to redeem HAJMM's Class B revolving fund certificate?

A. [M]y opinion is that the Board of Directors did abuse its discretion in failing to redeem this equity.

Q. Do you have an opinion satisfactory to yourself as to when the abuse of discretion occurred?

A. In my opinion the abuse occurred when demand was made on the cooperative to pay it back and the cooperative refused to do so.

Q. Do you have an opinion satisfactory to yourself as to whether the abuse of discretion is a continuing matter?

A. Yes, this decision can be made at any time, so it is a continuing problem.

. . .

Q. Do you have an opinion satisfactory to yourself as to whether there was a fiduciary duty both by Raeford and the defendant, Marvin Johnson, to the HAJMM Company?

. . .

A. In my opinion . . . there was such a relationship.

Q. Do you have an opinion satisfactory to yourself as to whether the fiduciary duty was breached?

. . .

A. I believe that the fiduciary duty was breached.

Q. Do you have an opinion satisfactory to yourself as to when the fiduciary duty was breached?

A. I believe it was breached when the Evans family made demand on the cooperative to pay it back, and the cooperative refused to do so.

Q. Do you have an opinion satisfactory to yourself as to whether this breach is continuous?

A. Yes, this, this is a continuing duty.

The court submitted issues to the jury concerning whether defendant breached its by-laws by refusing to retire the certificates in the reasonable exercise of its discretion, and whether defendants breached a fiduciary duty by refusing to retire the certificates. Contrary to the majority's assertion, this case may not be distinguished from the state precedents cited earlier: irrespective of how complex the *factual* issues were in those cases, they did not involve *legal standards* which were necessarily less complex than those relevant to this case. Once Dr. Baarda clarified the admittedly complex facts concerning the operation and financing of this agricultural cooperative and stated criteria pertinent to judging its financial transactions, the jury was in as good a position as Dr. Baarda to apply the relevant legal standards given by the trial judge to the facts of this case. I question the helpful "expert" nature of the conclusion that defendants breached their "fiduciary" duties to plaintiff since the legal meaning of the term "fiduciary" is nearly identical to its meaning to laymen. *Compare Webster's Third New Int'l Dictionary* at 845 (1968) *with Black's Law Dictionary* at 753-54 (1968). Thus, given the minimal helpfulness of the specific legal conclusions stated above, the unfair prejudice to defendants of Dr. Baarda's weighty legal conclusions warrants their exclusion under Rule 403.

Although the federal courts would arguably apply the rules of evidence to permit these opinions under these facts, we are bound by the unqualified state precedents cited earlier. Given those authorities, the erroneous admission of Dr. Baarda's opinions were

not cured by the trial judge's pattern instructions on credibility and expert testimony. As I believe there is a reasonable likelihood a different result might have been reached had Dr. Baarda's legal conclusions been excluded, I would grant defendants a new trial of the issues embraced by his testimony.

Furthermore, by establishing defendants' breach of fiduciary duty (and therefore their constructive fraud), Dr. Baarda's testimony also significantly affected plaintiff's deceptive trade claims. Thus, while I agree with the majority that the trial court erroneously dismissed plaintiff's deceptive trade claims, I would remand for a new trial of all claims, including the deceptive trade claims.