Ehrenhaus v. Baker, 2008 NCBC 19.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CIVIL ACTION NO: 08 CVS 22632

IRVING EHRENHAUS, On Behalf of Himself
and All Others Similarly Situated,

      Plaintiff,

      v.

JOHN D. BAKER, II, PETER C. BROWNING,
JOHN T. CASTEEN, III, JERRY GITT,
WILLIAM H. GOODWIN, JR., MARYELLEN
C. HERRINGER, ROBERT A. INGRAM,
DONALD M. JAMES, MACKEY J.
MCDONALD, JOSEPH NEUBAUER,
TIMOTHY D. PROCTOR, ERNEST S. RADY,
VAN I. RICHEY, RUTH G. SHAW, LANTY L.
SMITH, G. KENNEDY THOMPSON, DONA
DAVIS YOUNG, WACHOVIA
CORPORATION and WELLS FARGO &
COMPANY,

      Defendants.

ORDER & OPINION

*Greg Jones & Associates, P.A. by Gregory L. Jones, and Wolf Popper LLP by
Robert M. Kornreich, Chet Waldman and Carl L. Stine for Plaintiff Irving
Ehrenhaus.*

*Robinson, Bradshaw & Hinson, P.A. by Robert W. Fuller, Garland S. Cassada
and Katherine G. Maynard for Defendants Wachovia Corporation and the
Individual Defendants.*

*Hunton & Williams LLP by T. Thomas Cottingham, III, Patrick L. Robson
and Edward J. Fuhr, and Wachtell, Lipton, Rosen & Katz by Paul K. Rowe
for Defendant Wells Fargo & Company.*

Diaz, Judge.

{1}     Plaintiff has filed a purported class action on behalf of himself and all other public shareholders of Defendant Wachovia Corporation ("Wachovia" or the "Company").

{2}     Plaintiff's Complaint alleges that Wachovia and its board of directors (every member of which is named as a defendant in the action) breached their fiduciary duties toward the public shareholders in connection with a proposed merger between the Company and Defendant Wells Fargo & Company ("Wells Fargo").

{3}     Plaintiff's Complaint seeks injunctive relief or, in the alternative, rescission of the merger, if consummated, and money damages.

{4}     The Court has before it (1) Plaintiff's Amended Motion for Expedited Proceedings, and (2) Plaintiff's Motion for Preliminary Injunction.[1]

{5}     Plaintiff has moved to enjoin the merger[2] and requests that the Court expedite discovery and set a hearing on his motion for preliminary injunction in advance of the merger closing date.[3]

{6}     Pursuant to Business Court Rule 15.4, the Court rules on the request for expedited proceedings without a hearing.

{7}     After considering the Court file, the Motions, and the briefs of the parties, the Court **DENIES** Plaintiff's motion for expedited discovery but **GRANTS** his motion for expedited resolution of his prayer for preliminary injunctive relief, which will proceed on the schedule set forth below.

---

[1] The parties have submitted briefs in connection with Plaintiff's Amended Motion for Expedited Proceedings, but they have filed no briefs related to Plaintiff's Motion for Preliminary Injunction. All references made in this Order to the parties' briefs, therefore, refer to the briefs filed in connection with the former Motion.

[2] Plaintiff asserts in his reply brief that he only seeks to enjoin certain terms of the Wells Fargo merger that purportedly violate the Wachovia shareholders' rights to freely and independently vote as to approval of the merger. (Reply Br. 12.)

[3] While no date has been set for a shareholder vote on the merger, Defendants anticipate that it will be held sometime in December 2008 to permit the merger to close before year-end. (Resp. Br. 7.)

# I.

## BACKGROUND

### A.

### INTRODUCTION

{8}     For several months, this nation has been engulfed by a financial storm the likes of which have not been seen since the Great Depression.  Venerable financial institutions thought to be permanent pillars of both Wall Street and Main Street have been sold at the equivalent of a federal fire sale, nationalized, or put into bankruptcy or receivership.

{9}     Wachovia's downfall has been particularly dramatic, accelerated by market concerns regarding the Company's deteriorating real estate mortgage portfolio, which, when combined with the maelstrom affecting world financial markets, caused an extended run on the Company's bank deposits.  (Green Aff., Ex. A.)

{10}    The death knell for Wachovia began sounding on 25 September 2008 following two stunning events:  (1) the Federal Deposit Insurance Corporation's seizure of the banking assets of Washington Mutual—by far the biggest bank failure in U.S. history; and (2) the U.S. House of Representative's rejection of the initial "bailout" plan proposed by the United States Treasury for the nation's financial system.  (Merritt Aff., Ex. 1, Steel Aff. ¶ 3.)

{11}    Facing significant downward market pressure on the Company's share price following these events,[4] Wachovia's senior management began vetting merger suitors.  (Merritt Aff., Ex. 1, Steel Aff. ¶¶ 3–4.)

{12}    Wells Fargo and Citigroup, Inc. ("Citgroup") quickly emerged as potential merger partners.

---

[4] On 29 September 2008, Wachovia's share price closed at $1.84, down over 90% from its $18.75 closing price ten days earlier.  (Merritt Aff., Ex. 3.)

{13} On 29 September 2008, Citigroup and Wachovia signed what the Company characterizes as a non-binding agreement pursuant to which Citigroup was to acquire Wachovia's banking subsidiaries.

{14} On 2 October 2008, Wells Fargo tendered a competing merger proposal to acquire all of Wachovia's assets.

{15} On 3 October 2008, after being advised by Robert Steel (Wachovia's CEO and President) and the Company's outside advisors that the Federal Deposit Insurance Corporation (the "FDIC") was prepared to place Wachovia into receivership if a merger did not materialize with either Citigroup or Wells Fargo, Wachovia's board approved the Wells Fargo proposal. (Merritt. Aff., Ex. 1, Steel Aff. ¶ 19.)

{16} The proposed merger with Wells Fargo (the "Merger Agreement") is a stock-for-stock transaction that would result in Wachovia's shareholders receiving 0.1991 shares of Wells Fargo common stock for each share of Wachovia common stock they own, valued at just under $7.00 per Wachovia share. (Merritt Aff, Ex. 1, Steel Aff. ¶ 18.)

{17} In conjunction with the Merger Agreement, Wachovia and Wells Fargo also executed a separate share exchange agreement (the "Share Exchange"), pursuant to which Wells Fargo acquired newly issued Wachovia preferred stock representing approximately 39.9% of the Company's aggregate voting rights. (Green Aff., Ex. E.)[5]

{18} The Merger Agreement does not allow Wachovia's board to withdraw from the proposed Wells Fargo transaction should a third party offer a higher bid; in such a case, the board's sole option is to submit the Merger Agreement to the shareholders without recommendation, although it may communicate the basis for its lack of a recommendation. (Merritt Aff., Ex. C to Ex. 1, §§ 6.3 and 6.8.)

---

[5] Plaintiff also alleges that members of the Wachovia board own approximately 2.5% of all outstanding shares, which (according to Plaintiff) means that Wells Fargo has "locked up" 42% of the shares in favor of the Merger Agreement. (Opening Br. 5.)

{19} On 12 October 2008, the Board of Governors of the Federal Reserve System (the "Fed Board") approved the Merger Agreement. (Merritt Aff., Ex. 7.)

{20} The Fed Board acted quickly, noting that "the unusual and exigent circumstances affecting the financial markets[ and] the weakened financial condition of Wachovia . . . justified expeditious action on [the Merger Agreement]." (Merritt Aff., Ex. 7.)

{21} The Fed Board also approved the Merger Agreement knowing full well that Wachovia's board had ceded substantial voting rights to Wells Fargo as part of the merger consideration.[6]

B.

CONTENTIONS OF THE PARTIES

{22} Plaintiff contends Defendants have engaged in "an unlawful scheme and plan to enable [Wells Fargo] to acquire Wachovia for inadequate consideration and in breach of the individual defendants' fiduciary duties." (Opening Br. 2.)

{23} According to Plaintiff,

> Wachovia's Board negotiated a Merger Agreement with, among other things, an inadequate "fiduciary out" clause, a draconian and unlawful Share Exchange [that circumvents the voting process and renders the vote on the Merger essentially meaningless],[7] and at an inadequate exchange ratio for Wachovia shareholders, all at the same time assuring that Wachovia's senior executives would receive lucrative "golden parachutes," whether or not they continued to work for Wells Fargo.

(Opening Br. 4–5.)[8]

---

[6] The Fed Board also provided notice of the Merger Agreement to the Office of the Comptroller of the Currency, the Office of Thrift Supervision, and the Department of Justice, all of which advised the Fed Board they had no objection to its approval. (Merritt Aff., Ex. 7.)

[7] Plaintiff also contends the Share Exchange is unenforceable under section 126(c) of the Emergency Economic Stabilization Act of 2008 (the "EESA"). The portion of the EESA relied on by Plaintiff, however, provides that any agreement that "directly or indirectly . . . affects, restricts, or limits the ability of any person to offer or acquire . . . all or part of any insured depository institution" shall be unenforceable **against an acquirer**. (Opening Br. 6.) Defendants assert in their brief in opposition that Wells Fargo is the only acquirer on the horizon (Resp. Br. 5), and it obviously has no interest in having the Share Exchange declared unenforceable.

[8] Defendants dispute that the Merger Agreement is tainted by a conflict of interest. There is no dispute, however, that three members of the current Wachovia board will be invited to join the Wells Fargo board if the Merger Agreement is finalized. (Green Aff., Ex. F.)

{24} As to the claim that the price offered by Wells Fargo for Wachovia's stock is inadequate, Plaintiff contends that the approximately $7-per-share valuation of the Company's stock is $3 less than the market price a week before the Merger Agreement was consummated, and does not reflect the increased value of Wachovia's assets following Congress' passage of the financial "bailout" package on 3 October 2008. (Opening Br. 8.)

{25} Plaintiff also points to public statements made by Robert Steel a mere two weeks before the Merger Agreement was approved, wherein he touted Wachovia's "great future as an independent company." (Opening Br. 4.)

{26} Plaintiff requests leave to take unspecified discovery on an expedited basis[9] and also requests a hearing on his motion for a preliminary injunction in advance of the shareholder vote on the Merger Agreement.

{27} Wachovia contends that expedited proceedings are "not warranted here because Plaintiff is seeking to prohibit or modify a merger necessary to ensure Wachovia's continued viability—and equally necessary to avoid the damage to customers, depositors, employees, shareholders and the public that would occur if the merger were to be put in doubt, delayed, or blocked." (Resp. Br. 3.)

{28} Defendants assert that Wachovia's board faced a "stark choice" when it met "in the wee hours of [3 October 2008]" to consider the Merger Agreement—that is, accept the Wells Fargo proposal or allow the FDIC to place the Company's banking subsidiaries in receivership. (Resp. Br. 4.)

{29} Defendants dismiss as Monday-morning quarterbacking Plaintiff's view that Wachovia could have survived as a stand-alone entity following Congress' 4 October 2008 enactment of the EESA, contending that "[t]here is no basis for the plaintiff's assumption that emergency government funding would be available to Wachovia." (Resp. Br. 4 n.2.)

{30} As for Plaintiff's claims that the transfer to Wells Fargo of almost 40% of Wachovia's aggregate voting rights pursuant to the Share Exchange effectively

---

[9] Plaintiff's Amended Motion does not attach or otherwise describe the discovery he proposes to take in this case.

disenfranchises Wachovia's public shareholders and precludes any competing bid for the Company, Defendants respond, first, that the Share Exchange was a necessary part of the consideration for the merger, and second, that Plaintiff's argument

> is based on the unsubstantiated and illogical notion that Wachovia has alternatives to the Wells Fargo merger and that somehow shareholders are being prevented from taking advantage of these supposedly superior opportunities. . . . It is now more than a month since Wachovia first announced that it was available for a transaction, and no offers other than those by Citigroup and Wells Fargo have been made. If any capable third party was interested in making such an offer, it could have done so.

(Resp. Br. 5.)

{31} Defendants also reject Plaintiff's "golden parachutes" claim, contending that the only member of Wachovia's management who voted to approve the Merger Agreement is Robert Steel, who "has already announced that he will not remain with the merged company." (Merritt Aff., Ex. 5.)

{32} Finally, Defendants contend Plaintiff is in no position to provide adequate security should the Court grant preliminary injunctive relief, noting that "it is inconceivable that this shareholder could possibly post a bond for the potential costs and damages resulting from obtaining a wrongful injunction against a multi-billion dollar merger that is critical to the stability of the financial system." (Resp. Br. 3.)[10]

## II.
## PRINCIPLES OF LAW

{33} The North Carolina Rules of Civil Procedure provide that trial courts may enlarge or shorten the time for responding to discovery or taking depositions. *See* N.C. R. Civ. P. 30(b)(3), 33(a), 34(b), 36(a).

---

[10] As a prolific North Carolina business law blogger describes it, "That would be quite a bond." Mack Sperling, *Plaintiff Seeking Expedited Discovery in Lawsuit over Wachovia-Wells Fargo Merger*, North Carolina Business Litigation Report (Oct. 28, 2008), http://www.ncbusinesslitigationreport.com/2008/10/articles/class-actions/plaintiff-seeking-expedited-discovery-in-lawsuit-over-wachoviawells-fargo-merger.

{34}    Our appellate courts, however, have not addressed the standard to be applied by a trial court in considering a request for expedited discovery.

{35}    Absent such guidance, the Court looks to federal cases interpreting the analogous Federal Rules of Civil Procedure, and to Delaware cases addressing the issue in the context of challenges to a proposed merger transaction. *See Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) (stating that because the North Carolina Rules of Civil Procedure are substantially similar to the Federal Rules, our courts often look to federal cases for interpretive guidance); *First Union Corp. v. Suntrust Banks, Inc.*, 2001 NCBC 9 ¶ 32 (N.C. Super. Ct. July 20, 2001), http://www.ncbusinesscourt.net/opinions/2001%20NCBC%2009A.pdf (stating that "North Carolina courts have frequently looked to Delaware for guidance because of the special expertise and body of case law developed in the Delaware Chancery Court and the Delaware Supreme Court").

{36}    The federal courts take divergent views on the question of expedited discovery.  One line of cases holds that where a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing,

> "courts should require the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."

*Crown Crafts, Inc. v. Aldrich*, 148 F.R.D. 151, 152 (E.D.N.C. 1993) (*quoting Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)).

{37}    Other courts have criticized this approach, noting that *Notaro* puts the merits cart before the discovery horse by requiring a party to demonstrate his entitlement to preliminary injunctive relief before obtaining discovery to prove the claim. *See, e.g., Dimension Data N. Am., Inc., v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005).  Such courts instead require only a showing of  reasonableness or good cause for taking expedited discovery, "taking into account the totality of the circumstances." *Id.*

{38}    The Delaware cases put some flesh on the good cause standard for expedited proceedings in the context of a disputed merger transaction by requiring a plaintiff to "articulate a sufficiently colorable claim and show a sufficient possibility of a threatened irreparable injury to justify imposing on the defendants and the public the extra (and sometimes substantial) costs of an expedited . . . proceeding." *Marie Raymond Revocable Trust v. MAT Five LLC*, 2008 Del. Ch. LEXIS 77, at *6 (June 26, 2008).

III.

ANALYSIS

{39}    In considering Plaintiff's request for expedited proceedings, the Court must not lose sight of Plaintiff's burden on the merits.

{40}    Plaintiff alleges that Wachovia's board of directors breached their fiduciary duties to him and his fellow shareholders.  To prevail on that claim, however, Plaintiff must overcome the deference accorded Defendants' actions by North Carolina's business judgment rule.

{41}    The business judgment rule

> "operates primarily as a rule of evidence or judicial review and creates, first, an initial evidentiary presumption that in making a decision the directors acted with due care (i.e., on an informed basis) and in good faith in the honest belief that their action was in the best interest of the corporation, and second, absent rebuttal of the initial presumption, a powerful substantive presumption that a decision by a loyal and informed board will not be overturned by a court unless it cannot be attributed to any rational business purpose."

*Hammonds v. Lumbee River Elec. Mbrshp. Corp.*, 178 N.C. App. 1, 20–21, 631 S.E.2d 1, 13 (2006) (*quoting* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law*, § 14.06, at 14-16 to 14-17 (2005)).

{42}    Thus, the rule "protects corporate directors from being judicially second-guessed when they exercise reasonable care and business judgment." *HAJMM Co. v. House of Raeford Farms*, 94 N.C. App. 1, 10, 379 S.E.2d 868, 873, *review on*

*additional issues allowed*, 325 N.C. 271, 382 S.E.2d 439 (1989), *and modified, aff'd in part, rev'd in part on other grounds*, 328 N.C. 578, 403 S.E.2d 483 (1991).

{43} Plaintiff may well be unable to overcome the high hurdle imposed on him here by the business judgment rule, particularly where (1) Wachovia's board asserts that quick action on the Merger Agreement was necessary to avoid a government-directed liquidation of the Company, and (2) Plaintiff presents no evidence of a competing offer for the Company. *See, e.g.*, *Marcoux v. Prim*, 2004 NCBC 5 ¶ 64 (N.C. Super. Ct. April 16, 2004), http://www.ncbusinesscourt.net/opinions/2004%20NCBC%205.htm (applying Delaware law and stating "that in the absence of a competing offer a plaintiff must make a particularly strong showing on the merits to obtain a preliminary injunction because an injunction in such circumstances risks significant injury to shareholders").

{44} That said, however, Plaintiff appears to have alleged colorable claims as to his contentions that (1) the Share Exchange transferring a nearly 40% voting bloc to Wells Fargo in advance of a vote on the Merger Agreement is unduly coercive, and (2) the limited "fiduciary out" clause contained in the Merger Agreement violates the Wachovia board's continuing responsibility to exercise its fiduciary duties. *See generally First Union Corp.*, 2001 NCBC 9 ¶¶ 81, 89 (stating that (1) a relevant test as to shareholder coercion is whether the vote will "'be a valid and independent exercise of the shareholders' franchise, without any specific preordained result which precludes them from rationally determining the fate of the proposed merger,'" and (2) courts should invalidate merger plans that "purport to restrict a board's duty to fully protect the interests of the corporation and its shareholders").

{45} Plaintiff also presents a colorable claim as to irreparable harm.

{46} Nevertheless, the Court is not convinced that expedited discovery is necessary to resolve the issues raised by Plaintiff's motion for a preliminary injunction.

{47} In that regard, the parties' briefs barely address the scope of any proposed discovery, focusing instead on the merits of Plaintiff's request for injunctive relief.

Plaintiff also has not specified the discovery he wishes to take, nor has he served discovery on any Defendant.

{48} Moreover, this is an unusual case, in that most (if not all) of the facts pertinent to resolving Plaintiff's request for preliminary injunctive relief are matters of public record.

{49} In that vein, there is no dispute that:

(1) A mere two weeks before the Company's demise, Wachovia's President and CEO was insisting publicly that Wachovia "had a great future as an independent company;"

(2) In the ensuing period, Wachovia's share price tumbled from $18.75 to $1.84;

(3) Wachovia's board faced a crisis of historic proportions when it met to consider and approve the Merger Agreement;

(4) Wachovia's board took very little time to digest and act upon the Merger Agreement;

(5) The Share Exchange gives Well Fargo almost 40% of the vote in advance of a decision by the Company's shareholders as to approval of the Merger Agreement;

(6) The "fiduciary out" clause in the Merger Agreement prohibits the Wachovia board from walking away from the Wells Fargo deal should a better deal materialize, but instead only allows the board in that instance to make no recommendation to the shareholders, with an explanation;

(7) Should the Merger Agreement be approved by the shareholders, three members of the Wachovia board will be invited to join the Wells Fargo board;

(8) All of the agencies with regulatory authority over the Merger Agreement have approved it; and

(9) Following approval of the Merger Agreement by Wachovia's board, no other entity has made a bid to purchase the Company.

{50}  What the Court must now decide is whether these circumstances warrant granting Plaintiff's specific request that the Court preliminarily enjoin enforcement of the deal-protection devices embedded in the Merger Agreement.  (Reply Br. 12.)

{51}  The Court concludes that it may resolve this request on an expedited basis without allowing either side to take discovery.

IV.

CONCLUSION

{52}  The Court **DENIES** Plaintiff's request for expedited discovery.

{53}  The Court **GRANTS** Plaintiff's request for expedited resolution of his Motion for Preliminary Injunction.  As to that Motion, the Courts sets the following schedule:  (1) Plaintiff shall file his brief in support of his Motion for Preliminary Injunction (along with any other supporting materials) by 10 November 2008; (2) Defendants shall file their brief in opposition (along with any supporting materials) by 17 November 2008; (3) Plaintiff's reply shall be filed by 21 November 2008; and (4) the Court sets this matter for hearing at 2:00 pm on 24 November 2008 in Courtroom 6370 of the Mecklenburg County Courthouse.

**SO ORDERED** this the 3rd day of November, 2008.